No. 43,539

ERIC H. ANDERSON, *Appellant*, v. W. E. COOPER, *Appellee*.

(391 P. 2d 86)

Opinion filed April 11, 1964.

*Keith G. Sebelius* and *William J. Ryan*, both of Norton, argued the cause, and were on the briefs for the appellant.

*L. F. Cushenbery*, of Oberlin, argued the cause, and *Elmo Lund*, of Oberlin, *Eugene P. Zuspann* and *Bernard E. Whalen*, both of Goodland, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an action by a farm laborer to recover damages for the loss of a leg and other injuries while operating an ensilage cutting machine.

The issues presented for determination on appeal require a detailed presentation of the facts. There are no questions raised as

to the pleadings. Although there were numerous witnesses, the record discloses very little conflict, if any, in the testimony.

The plaintiff, Eric H. Anderson, was employed as a farm laborer by the defendant, W. E. Cooper. The defendant carried on rather extensive farm operations in Thomas County, Kansas. At the time of the injury in question, the plaintiff was engaged in operating a Gehl self-propelled ensilage cutter which was owned by the defendant and used in preparing feed for his cattle. The plaintiff had been operating the ensilage cutter for "three or four weeks or possibly more" at the time of the accident.

In the process of preparing the ensilage the green fodder was cut and placed in windrows. The ensilage cutter then passed over the windrows, picking up the fodder, running it through a cutting device and blowing it through a conduit into trucks. The cutting blades or knives were attached to a wheel which weighed about 350 pounds and in normal operation revolved at about 720 r. p. m. Because of the weight of the cutting wheel and the speed at which it revolved, the wheel would continue to spin for sometime after the engine was stopped.

The fodder had grown somewhat uneven in the field. The machine would plug up some 7 or 8 times a day as heavy growths of fodder were encountered. The blower spout would plug with ensilage causing the ensilage to accumulate around the cutter blades and stall the engine. When the machine plugged with ensilage, it was necessary to unlatch the hood over the cutter blades and reach in and pull the ensilage out by hand. The hood over the cutting blades was attached at one end to the blower spout. On the top of the hood was a warning sign which read: "Do not open while running." The hood was made of light metal and had been sprung when the machine was overturned some years earlier. When the hood was disconnected for the purpose of lifting it and getting into the cutting blades, it would spring in and the blades would strike it if they were revolving. The plaintiff had been warned on numerous occasions not to unfasten the hood while the blades were turning. There were ways to determine whether or not the cutter blades were turning before the hood was opened if proper precautions were taken.

The engine on the machine had a defective switch. In traveling over rough ground, the switch would sometimes shake loose from its connection and cause the engine to stop. The switch in itself

was not dangerous. It simply caused the operation to stop until the engine was again started.

The machine was not inherently dangerous if operated with reasonable prudence and in accordance with the instructions. It was dangerous if the hood was removed or unfastened while the cutting blades were in motion. Plaintiff knew this. He testified:

"Q. Did you ever open that lid prior to October 10 of 1957 and have those blades turning when you opened them?

"A. I can't remember their ever doing that way. I know Ohrman and I talked about its being dangerous."

The plaintiff made no complaint that the machine was dangerous to operate.

At the time of the injury the motor had come to a stop. The plaintiff thought that the ensilage had plugged the blower and concentrated around the cutting blades, stopping the engine. He disengaged the clutch, got astride the hood and unfastened it. When he unfastened the hood, the rotating blades hit the hood and threw him off balance. His right foot and lower right leg were thrown in contact with the rotating cutting blades resulting in mutilation to such an extent that it was necessary to amputate the right leg just above the knee.

The plaintiff had erroneously assumed that the machine was plugged with ensilage. Instead, the switch had shaken loose and shorted out. When the machine was plugged with ensilage the rotating blades stopped rotating at the same time as the engine. When the switch shorted out and the engine stopped the cutting blades continued to rotate for some time. The plaintiff, believing that the machine was plugged, made no effort to determine whether or not the cutting blades were rotating.

The action came on for trial and at the close of plaintiff's evidence the defendant demurred thereto for the reasons that plaintiff's evidence showed no negligence on the part of the defendant, contributory negligence on the part of the plaintiff, and assumption of risk by the plaintiff. The court overruled the demurrer to plaintiff's evidence.

The defendant introduced his evidence and at the close thereof again demurred to plaintiff's evidence and moved for a directed verdict in favor of the defendant and against the plaintiff. The motions were overruled. The jury answered special questions and

returned a general verdict in favor of the defendant which was approved by the trial court.

A timely motion for a new trial was filed and at the hearing thereof the trial court found that the jury had been guilty of misconduct while viewing the machine, but stated:

"Gentlemen, I think that the motion for a new trial on the basis of misconduct is moot in view of the fact that I am now at this time going to reverse my decision on Mr. Cushenbery's motion at the end of the evidence and find that judgment should have been rendered at that time for the defendant. So, the Court holds that this question of misconduct of the jury is moot, because the jury could not bring in any other kind of verdict in this case that I could approve in this type of case under the doctrine of contributory negligence where there was any negligence on the part of Mr. Anderson, which bars him from recovery."

The journal entry reads in part:

"IT IS THEREFORE BY THE COURT ORDERED AND DECREED that the ruling of the Court on the defendant's Demurrer and Motion for Directed Verdict, made by the defendant at the close of all of the evidence, which Demurrer and Motion were overruled, should be reversed and such Demurrer and Motion for Directed Verdict are now sustained and judgment rendered in favor of the defendant, upon such Motion and Demurrer, and that plaintiff pay the costs of this action.

"IT IS FURTHER BY THE COURT ORDERED AND DECREED that the Motion for New Trial, filed by the plaintiff herein, is now a moot question and the same need not be ruled upon by the Court at this time."

The plaintiff has appealed contending that the trial court erred in failing to grant a new trial after finding the jury guilty of misconduct, and in sustaining a demurrer to plaintiff's evidence and directing a verdict in favor of defendant.

We must state at the outset that if the trial court correctly determined that a demurrer should have been sustained to plaintiff's evidence, or if it should have entered a directed verdict, the question of the jury's misconduct becomes immaterial.

The appellant first calls our attention to the rule applicable on consideration of a demurrer to the evidence, citing *Palmer v. The Land & Power Co.*, 172 Kan. 231, 239 P. 2d 960, where it was held:

"In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between direct and cross-examination and, if so considered, there is any evidence which sustains the plaintiff's case, the demurrer should be overruled." (Syl. 1.)

We adhere to the rule. We are constrained to hold, however, that appellant's evidence, and the evidence as a whole, shows positively that the appellant assumed any risk which was present in the operation of the machine; that he was guilty of negligence in the operation of the machine which caused his injury, and there was no evidence to the contrary.

The machine, like all harvesting machines which carry knives or cutting blades, did have some dangerous characteristics if improperly or carelessly operated. However, there was nothing inherently dangerous in the machine if operated according to instructions. The plaintiff had operated the machine some three or four weeks or more and was well acquainted with all of its characteristics.

In the recent case of *Blackmore v. Auer,* 187 Kan. 434, 357 P. 2d 765, we considered the assumption of risk by an employee and assembled the numerous cases pertaining thereto. It is stated beginning on page 444 of the opinion:

"Assumption of risk, in the law of master and servant, is a phrase commonly used to describe a term or condition in the contract of employment, either express or implied from the circumstances of the employment, by which the employee or servant agrees that certain dangers of injury, while he is engaged in the service for which he is hired, shall be at the risk of the employee or servant. (56 C. J. S., Master and Servant, § 357, pp. 1148, 1149.)

"In *Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253, it was said:

" '. . . But, reduced to its last analysis, the doctrine of assumed risk must rest for its support upon the express or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for resulting injury. To raise an implied agreement the risk assumed must be known to the employee, or it must be of such nature as, by the exercise of reasonable observation and caution for his own safety, he should have known it. It can never be said that one has agreed to assume responsibility for that of which he had no knowledge, or of the existence of which he is not chargeable with notice.' (p. 88.)

"The foregoing language was quoted with approval and applied in *Parker v. City of Wichita,* 150 Kan. 249, 92 P. 2d 86. It was also quoted in *Taylor v. Hostetler,* 186 Kan. 788, 352 P. 2d 1042.

"It has been said that one who, knowing all the danger and peril of pursuing a given course and being under no compulsion to encounter the same, freely and voluntarily continues therein, cannot recover damages for injuries he may suffer. (*Sweet v. Railroad Co.,* 65 Kan. 812, 70 Pac. 883; and *Cooper v. Southwestern Bell Telephone Co.,* 159 Kan. 67, 151 P. 2d 692.)

"The assumption of the usual risks of an employment is not ordinarily a jury question. It is a matter of law. It is only where the risk is or may be unusual that a jury question can arise; and even in such cases, if the risk though unusual is obvious, such as an ordinarily prudent man could appreciate

and understand, the workman who persists in the employment assumes the risk of it. (*Lively v. Railway Co.*, 115 Kan. 784, 225 Pac. 103, and authorities cited therein.)

"The reason for the doctrine of assumption of risk has been stated in *Lively v. Railway Co.*, supra, in the following language:

" '. . . It is also a part of the doctrine of assumption of risk that a workman's recourse, when called upon to perform a task too heavy or too dangerous for his capacity, is to quit his employment. That sounds harsh, too, but unless the court is to usurp the functions of the legislature it has no alternative but to declare the law as it is. In *Iron Works Co. v. Green*, 79 Kan. 588, 594, 100 Pac. 482, it was said:

" ' "At the first glance this seems to be a harsh rule, but since men have the right to accept employment in which both parties know the employee will be exposed to danger, and the employee has a right to accept greater compensation by reason thereof, neither the courts nor legal writers have been able to evolve a more equitable rule." (See, also, *S. K. Rly. Co. v. Moore*, 49 Kan. 616, 31 Pac. 138.)

" 'So this plaintiff, knowing as he did how heavy the rail was, and how many men were needed to handle it, and also knowing better than his employer —better than anybody else—how strong he was, how hard he could tax his muscles with safety to himself, continued in the employment and assumed the risk (*Stenvog v. Minnesota Transfer Ry. Co.*, 108 Minn. 199, 25 L. R. A., n. s., 362, and note) of hurting himself with the usual consequences, strain, rupture, hernia, which flow from overtaxing one's strength. . . .' (p. 789.)"

The doctrine of assumption of risk may present a complete defense and should not be confused with contributory negligence which may also present a separate and complete defense. However, it may be said that a person assumes the risk of injury from his own negligence.

The distinction between contributory negligence and assumption of risk was discussed in *Kleppe v. Prawl*, 181 Kan. 590, 313 P. 2d 227, 63 A. L. R. 2d 175, where it is said:

"While assumption of risk is somewhat akin to contributory negligence, these two doctrines of law are not synonymous because assumption of risk arises through implied contract of assuming the risk of a known danger; the essence of it is venturousness; it implies intentional exposure to a known danger; it embraces a mental state of willingness; it pertains to the preliminary conduct of getting into a dangerous employment or relation; it means voluntarily incurring the risk of an accident, which may not occur, and which the person assuming the risk may be careful to avoid; it defeats recovery because it is a previous abandonment of the right to complain if an accident occurs. Contributory negligence arises out of a tort; the essence of it is carelessness; it may or may not imply intentional exposure to a known danger; it is a matter of conduct; a contributorily negligent act leads more immediately to a specific accident. Another difference is that assumption of risk denies defendant's negligence while contributory negligence admits defendant's negligence but

denies it is the proximate cause of the accident. (65 C. J. S., Negligence, § 117, pp. 709-711; 38 Am. Jur., Negligence, § 172, p. 847.)" (p. 594.)

There can be but one conclusion drawn from the evidence. The plaintiff was guilty of negligence which caused his injury. The chief danger from the machine was in the cutting blades. The blades were completely enclosed. There could be no danger from the blades until the hood was removed, and there was no danger then if the hood was not removed while the blades were rotating. The appellant was well informed of this situation. He was an experienced farm hand some 54 years of age. He had been operating the machine some "three or four weeks, or more." He had been warned on numerous occasions not to remove the hood while the blades were rotating. With this knowledge and after numerous warnings that he should not open the hood while the blades were rotating, which warning was also printed on the hood itself, the appellant proceeded to remove the hood without ascertaining whether or not the cutting blades were rotating.

Although not dealing with an employee's injury, the rule announced in *Stevens v. Allis-Chalmers Mfg. Co.,* 151 Kan. 638, 100 P. 2d 723, has some application here. It was there held:

"Where there is a safe and usual method of controlling the power delivered from a farm tractor to a harvester-threshing machine, but the operator thereof sought to control it by a manifestly dangerous and unusual method and was injured in so doing, he did so at his own risk, and the manufacturer of the equipment is not liable in damages therefor." (Syl. 3.)

It is an elementary rule of law that every person must exercise ordinary and reasonable care for his own safety and not expose himself to unnecessary risks, dangers or hazards in performing his duties. An employee must exercise ordinary prudence in handling machinery. A master cannot be held liable where the employee elects to take a reckless and unnecessary risk. The appellant would not have been injured had he observed instructions not to remove the hood from the cutting blades until he had determined that they were not revolving.

In *Sullivan, Administrator v. Davidson,* 183 Kan. 713, 332 P. 2d 507, it is stated:

"The evidence and physical facts of this case lead to but one conclusion—had Gene handled the pipe in the normal and ordinary manner it would not have come in contact with the electric wire. *His manner of handling it fell below the standard to which, under the circumstances, a reasonable man should*

*have conformed for his own protection and to save himself from harm.* Had it not been for his own contributory negligence death would not have resulted. Under the wrongful-death statute (G. S. 1957 Supp. 60-3203) an action may be maintained by the personal representative of the deceased only in cases where the deceased, had he lived, could have maintained an action against the alleged wrongdoer." (p. 719. Emphasis supplied.)

There is but one conclusion that can be drawn from the evidence, the appellant was guilty of negligence which caused his injury and bars a recovery from his employer for damages.

Appellant relies primarily on the case of *Harvey v. Palmer,* 179 Kan. 472, 296 P. 2d 1053. The case is not in point. In that case a shield, which had been placed over a power take-off for reasons of safety only, had been removed by the defendant. It was inherently dangerous to use the equipment without the shield. The injured employee did not know that the power take-off without a shield was dangerous.

The judgment is affirmed.

APPROVED BY THE COURT.

FONTRON, J., not participating.