(564 P.2d 593)
No. 48,482

LEON GEORGE, *Appellant,* v. LOUIS BEGGS, *Appellee.*

Petition for review denied July 11, 1977.

Opinion filed May 20, 1977.

*Charles F. Forsyth* of Fleming & Forsyth, of Erie, for the appellant.

*Charles R. Hay* and *Wayne T. Stratton* of Goodell, Casey, Briman & Cogswell, of Topeka, for the appellee.

ABBOTT, P.J., FOTH and SPENCER, JJ.

SPENCER, J.: This is an action for damages for injuries sustained by plaintiff while working with defendant's cattle. At the close of plaintiff's case in chief, the trial court sustained defendant's motion for a directed verdict on the theory of assumption of risk, and plaintiff has appealed.

The accident occurred on October 29, 1974. On that date the plaintiff was employed by the defendant as a general farm laborer on defendant's farm in Neosho County, and had been so employed since about the middle of the previous March. The plaintiff, together with the defendant and the defendant's son, was engaged in the process of treating a herd of approximately forty calves (approximately 200 to 250 pounds in size) by vaccination, castration and spraying for pink eye. The method employed was first to enclose the entire herd into one pen from which the cows and calves were sorted into separate pens. The calves were then put through a "squeeze chute" where their heads were held by a "V" shaped board. The calves were then given the indicated treatment and released one at a time into the then empty first pen. After all of the calves had been through the squeeze chute, it was noticed that one of them had not been treated for pink eye. This calf was blinded by the condition of its eyes. When noticed, it

was in the pen with thirty-nine or forty other calves. There was some discussion as to what should be done, not related in detail, when the defendant said "catch the calf." The plaintiff then asked the defendant if he had a rope and "he said he didn't." The plaintiff then testified as follows:

> "So then we—I just went out and caught the calf. . . . I just walked right up to him and put my arm under his neck and grabbed hold of his tail and was holding on to him. I was kind of bent over. . . . The next thing I know I was on the ground. I don't know what happened."

The record reveals that the plaintiff was bent over, holding the calf, with his back to the remainder of the herd, which stampeded over him, causing his injuries.

At the time of the trial, plaintiff was twenty-six years of age, which would make him approximately twenty-four years of age on the date of the accident. He testified that although he had been reared in town, his father had purchased eighty acres of land and ten or fifteen cattle while he (the plaintiff) was still in high school, and that he had assisted his father on that farm whenever he was needed. This assistance included working with his father's cattle and the use of a squeeze chute when vaccinating and castrating the animals. The plaintiff testified that he had worked for other farmers who had livestock operations, and that, following his graduation from college, he had worked for still another farmer for a period of about two years before going to work for the defendant, with duties essentially the same as for the defendant. He also testified that for some time he had owned a few head of cattle himself and was aware from his experience with livestock that some animals can be easily frightened and can be unpredictable. Plaintiff also testified that, when they noticed the untreated calf, there had been some sort of "round-table" discussion as to what was to be done about the calf. When he was asked whether he had any voice on how the calf was going to be worked, he replied, "I could have I suppose if I had spoke up." Plaintiff testified that he had gone into a pen to catch baby calves in this manner before and "they're a little skittish of you" if they have to be worked a second time. On cross-examination, the plaintiff testified that they had discussed running the calf back through the herd at first; that none of them had really thought much about it; that he had been in cattle pens with calves before; and that he had worked with cattle long enough to realize the risk that might exist by doing so.

The defendant did not recall in detail what was said on the day of the accident but stated that he had no reason to doubt the plaintiff's word. He stated also that with hindsight it would have been better to use the chute for this one calf. His son confirmed that his father had said "catch the calf" but stated also that the directive was "to us, not one in particular I wouldn't say, just to us" and that the plaintiff had gone into the pen because he was closer to the cattle at that time, while he (the son) had gone back to the refrigerator to get the medicine for the calf's eyes. He also acknowledged that his father's statement was emphatic and that there was no warning given the plaintiff when the cattle started to stampede as there was not time to do so.

Plaintiff contends error on the part of the trial court in applying the doctrine of assumption of risk for reasons as follows:

1. In ruling as a matter of law that risks and danger of the act done in the employment were as well known to the employee as to the employer when the evidence showed the employer had a great deal more experience than the employee.

2. Because the risk was unusual and not apparent to either of the parties.

3. When the evidence showed that the employer was negligent in the manner of his operation and in ordering the employee into a position of danger which caused his injury.

Plaintiff also argues that, because of the comparative negligence statute, assumption of risk should no longer be considered a complete bar to recovery. He suggests that assumption of risk is an outmoded and unfair doctrine, especially so when contributory negligence is no longer an absolute bar to recovery.

The doctrine of assumption of risk was considered and applied by our supreme court as recently as March 5, 1977, in the case of *Borth v. Borth,* 221 Kan. 494, 561 P. 2d 408, wherein it was stated:

"The doctrine of assumption of risk is still viable in Kansas though its application is limited to cases such as this where a master-servant relationship is involved. . . ." (p. 499.)

We note that the *Borth* case dealt with the circumstances of an accident which occurred in 1971, prior to the enactment of our comparative negligence statute, K.S.A. 60-258a, which provides that the contributory negligence of a party in a civil action is not a complete bar to recovery for damages for negligence resulting in personal injuries. However, our court has consistently drawn a

distinction between the doctrine of assumption of risk and contributory negligence, the latter not necessarily being an element in injuries sustained in employment where the assumption of risk doctrine is applicable. (See *Kleppe v. Prawl,* 181 Kan. 590, 313 P. 2d 227; *Smith v. Blakey, Administrator,* 213 Kan. 91, 515 P.2d 1062.) Assumption of risk and contributory negligence being separate and distinct concepts in this state, the former remains a complete bar to recovery in cases such as here involved.

In ruling on the motion for a directed verdict, the trial court stated:

"The ruling is based on the doctrine of the assumption of risk. Neither party foresaw that what happened would happen, but I am compelled to the conclusion that the risk and the danger of what did happen was as apparent to the plaintiff as it was to the defendant. And, therefore, the doctrine of assumption of risk applies, that the employee assumed the ordinary risk of his employment."

Plaintiff argues that this finding of the trial court "flies in the face of the evidence itself" and cites the case of *Uhlrig v. Shortt,* 194 Kan. 68, 397 P.2d 321, in support of one of the rules deemed applicable to the facts of that case:

"There can be no liability on the part of the employer where it appears that the employee's knowledge of the danger was equal to or surpassed that of the employer. . . ." (194 Kan. at 72.)

Plaintiff states that although he had performed this particular operation once or twice before, he had never gone into a pen to catch such a large calf, and he had no idea of the danger in what he was doing. He said, on the other hand, that the defendant had been farming for twenty-seven years and often had to tell the plaintiff what to do and how to do it. Our supreme court in *Uhlrig* also stated:

"The doctrine of assumption of risk rests for its support upon the express or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for injuries resulting from his employment. This court has stated that to raise an implied agreement the risk assumed must be known to the employee, or it must be of such a nature as, by the exercise of reasonable observation and caution for his own safety, he should have known it. One, knowing all the danger and peril of pursuing a given course and being under no compulsion to encounter the same, who freely and voluntarily continues therein, cannot recover damages for injuries he may suffer. . . ." (194 Kan. at 73.)

It does not necessarily follow that greater experience means greater knowledge, nor does it follow that the doctrine of as-

sumption of risk is applicable only in those cases where the employee's knowledge of the danger is equal to or surpasses that of the employer, as may have been the case in *Uhlrig*. We are concerned here only with the plaintiff's knowledg~ of the duties he was to perform in his employment for the defendant and his awareness of the danger to which he was exposed in assuming the obligations of that employment. There is evidence that plaintiff had worked with cattle since his high school days; that he knew cattle sometimes become "skittish" when they are being treated as they were that day; and that he knew the danger of working with cattle.

Plaintiff correctly states that the doctrine is based on either an express or implied term of the contract that the employee will assume the risk involved. He argues that the portion of the trial court's finding that "neither party foresaw that what happened would happen," demonstrates that the plaintiff could not have assumed the risk in that he was not aware of the danger involved and had never been in the exact situation before. It is highly unlikely that the "exact" situation has ever occurred before or will ever occur again, but as plaintiff testified, he had been in cattle pens with calves before and had worked with cattle long enough to realize the risk that might exist in doing so. As stated in *Borth v. Borth*, supra, " . . . [t]he risk of injury by the cattle is clearly one that arises out of the activity being carried on, and one that is open and apparent. . . ." (221 Kan. at 503.)

Plaintiff argues that the doctrine should not be applied when the evidence was that the defendant ordered the plaintiff into a position of danger which caused his injuries. (*Railroad Co. v. Morris*, 76 Kan. 836, 93 Pac. 153.)

There is nothing in this record to justify a conclusion that the facilities provided at the defendant's farm were out of the ordinary or that the procedures followed in treating the calves were in any way unusual. On the contrary, the plaintiff's testimony indicates that he had been involved in similar procedures with similar facilities even while in high school. Neither is there anything in the record which would indicate an emergency situation into which the plaintiff was ordered without time to deliberate as to a better course to pursue. There was time to deliberate and there was some discussion as to how best to handle the situation. As a matter of fact, the plaintiff testified "we discussed running the

calf back through the herd first." (*Schoof v. Byrd,* 197 Kan. 38, 415 P.2d 384.) As it developed, the situation to which the plaintiff responded was one of danger, which was apparent, and of which the plaintiff was or should have been aware.

The facts and circumstances of this case are almost "four-square" with those set forth in *Borth v. Borth,* supra, and the reader is referred to that opinion for a more comprehensive treatment of the subject matter.

Judgment affirmed.