(245 P.3d 1091)
No. 102,662

ADAM SIMMONS, *Appellant*, v. RICHARD W. PORTER and
SARAH M. PORTER, d/b/a PORTER FARMS, *Appellees*.

Opinion filed January 7, 2011.

*Jeffrey W. Jones*, of Hamilton, Laughlin, Barker, Johnson & Watson, of Topeka, for appellant.

*Craig C. Blumreich*, of Larson & Blumreich, Chartered, of Topeka, for appellees.

Before LEBEN, P.J., PIERRON and BUSER, JJ.

PIERRON, J.: Adam Simmons appeals a summary judgment ruling in favor of Richard W. Porter and Sarah M. Porter, d/b/a Porter Farms (Porter Farms), after he was tragically injured in a gasoline fire. Simmons argues the district court improperly applied the assumption of risk doctrine in granting summary judgment to Porter Farms.

The parties agree on the following uncontroverted facts:

Simmons sustained personal injury on February 11, 2004, while performing work in the course and scope of his employment with Porter Farms. Simmons had been hired by Porter Farms to work as a mechanic on farm trucks and machinery. When Simmons applied for the job, he advised Porter Farms he was an auto mechanic with several years of experience. Simmons claimed he had a lifetime of experience as an auto mechanic.

At the time he was injured, Simmons was in the process of removing the fuel tank from a 1978 Ford F-250 pickup truck. The truck had a gas leak in the fuel tank and Simmons was going to remove the fuel tank to determine where it leaked and if the fuel tank could be repaired or would need to be replaced.

Simmons commenced his work on the fuel tank without first draining or removing the fuel from the tank; the level being "less than a half a tank." In his deposition, Simmons explained he left 5 or less gallons of fuel in the tank in order to keep the gas fumes down and in turn keep the ignition possibilities down. Simmons used a 4-ton floor jack to raise the truck so he could work underneath it. Simmons rolled under the vehicle on his back on a floor creeper. He hung a shop light from the frame rail of the truck for illumination.

Simmons found that the fuel tank was secured by a plumbing strap wrapped around the tank and connected to the frame by one bolt on the front side and by bailing wire wrapped around the tank and the frame on the back side. Simmons was aware of how the fuel tank was attached even before he put the jack under the truck to raise it. Although the fuel tank was not secured with factory straps or replacement part straps, Simmons continued to work on

the truck anyway. He began removing the fuel tank by using a pneumatic wrench to loosen the bolt securing the plumbing strap to the frame. The fuel tank suddenly shifted, fell, and dropped off of the jack. Simmons was covered in gasoline. As Simmons quickly pushed out from under the truck on the floor creeper, his foot caught on the shop light causing it to fall, break, and ignite the gasoline, setting him on fire.

Simmons was fully aware of the fuel tank configuration on the truck and knew there was a potential risk of fire in removing a fuel tank. Simmons acknowledged that the condition of the fuel tank was open and obvious to him and he understood the risks in removing the tank.

Simmons had removed fuel tanks from other Porter Farm vehicles. However, each of the prior tanks had been properly secured with factory straps or replacement straps. Nearly all of Simmons' time at Porter Farms was spent in the shop working on farm trucks and machinery. There were three mechanics who worked at Porter Farms during the time Simmons worked there. However, Simmons said there was no one at Porter Farms at this time who knew more about fixing cars and trucks than he. Porter Farms did not have a vehicle lift, a fuel siphon pump, or a car jack.

Simmons was severely burned and permanently injured in the fire. Simmons sued Porter Farms, arguing Porter Farms owed him a legal duty of care and skill to provide him with a reasonably safe workplace. He alleged the breach of this duty was the natural, probable, and proximate cause of his injuries.

In managing the case, the district court permitted Porter Farms to file a motion for summary judgment on the issue of Porter Farms' affirmative defense of assumption of risk. In granting summary judgment to Porter Farms, the district court concluded as follows:

"The Court believes that this is an assumption of risk case. The court finds that, under the circumstances of this case, the court can rule as a matter of law on the assumption of risk issue and not submit it to a jury.

"The plaintiff in this case had knowledge relating to the use of or dealing with automobile mechanics or vehicle repair equal to or superior of that of the defendants. The court finds the plaintiff was in charge of this particular project and

nobody else told him how to do his job. The court finds the plaintiff did recognize that there is a risk of fire with gasoline and made a decision to proceed ahead with the project as he was asked to do as part of his employment. The court finds the plaintiff did not ask for any additional equipment but chose to proceed with the equipment that he had in his possession. Based upon these findings, the court believes the doctrine of assumption of risk applies and that the motion for summary judgment should be granted.

"In addition to its previous findings, the court finds that there was no defective equipment or tools used or provided by the defendants in this case. There may not have been the ideal equipment or proper equipment but the equipment provided to the plaintiff to perform the repair was not defective.

"The court does not make a finding that negligence existed or did not exist because this is a case where the doctrine of assumption of risk bars the cause of action whether the defendants were negligent or not. The finding of the court is simply that, based upon the evidence contained in the discovery record, the plaintiff was in charge of the project and how the project was performed and, since the plaintiff was in charge and had the most knowledge of automobile mechanics and that kind of work, certainly more than the defendants, the court finds the plaintiff assumed the risk of injury."

On appeal, Simmons first argues the district court erroneously found all of the facts in Porter Farms' motion for summary judgment to be uncontroverted and failed to give proper consideration to the facts stated in his response. He cites no Supreme Court Rules or case law supporting his argument, which consumes a little over one page of his appellate brief.

The court in *City of Arkansas City v. Bruton*, 284 Kan. 815, 166 P.3d 992 (2007), addressed a similar type of argument. The *Bruton* court held the Court of Appeals erred when it concluded that the parties violated Supreme Court Rule 141 (2006 Kan. Ct. R. Annot. 203.) and that the sheer number of filings of statements of facts indicated there remained unresolved material facts. 284 Kan. at 837. In arriving at this conclusion, the *Bruton* court engaged in the following analysis:

"This is a complex case, involving complex facts. It is to be expected, in such cases, that litigation will become heated. It is not uncommon in such instances that parties may submit long 'factual statements' that also include conclusory statements and legal arguments. However, contrary to the Court of Appeals' conclusion, this fact alone does not make summary judgment improper under Rule 141. In fact, Rule 141 provides that a district court should state the facts it finds con-

trolling when issuing its decision-indicating that not all facts listed by the parties (even if controverted on some level) will be material to its decision.

"The district court noted that it believed it could 'separate the wheat from the chaff in the City's statement of uncontroverted facts,' by sorting out conclusory statements and statements that led to improper legal conclusions. It also found that it was able to sort out the facts that were material to the resolution of this case. The resolution of procedural questions is not specifically addressed by the Supreme Court Rules, and the Rules of Civil Procedure are left to the sound discretion of the trial court. The fact that parties claim that more facts are 'uncontroverted' than that required by Rule 141 does not render summary judgment improper when the trial court undergoes the correct legal analysis and identifies that the facts necessary to decide such legal questions have not been challenged." 284 Kan. at 836-37. .

The district court below engaged in the same separation of the wheat from the chaff in adopting its statement of uncontroverted facts. At the beginning of the summary judgment hearing, the district court stated, "I will advise you that I have read everything you submitted and the complete file." Later, in rendering its ruling from the bench, the district court repeated that it had considered the entire file in preparation and stated:

"I have looked at the defendant's motion for summary judgment and the uncontroverted facts that were submitted as part of that memorandum and I would note that there is—those facts are not controverted. Now there is some explanations on some of the points that were made. All the responses are uncontroverted but there are some, yes, but answers that say here are some additional comments or facts or opinions about what they mean."

Simmons argues the district court failed to consider the 17 additional facts he claimed were uncontroverted. He contends we should deem all his facts uncontroverted since he is the nonmoving party in the summary judgment proceedings and so is entitled to a reasonable inference of facts viewed in his favor. Simmons does not cite any authority in support of this statement. We agree with the district court that Simmons is encouraging the court to adopt his "yes-but" statement of facts as uncontroverted facts. A party opposing summary judgment must produce "something of evidentiary value." *Kastner v. Blue Cross & Blue Shield of Kansas, Inc.*, 21 Kan. App. 2d 16, Syl. ¶ 6, 894 P.2d 909, *rev. denied* 257 Kan. 1092 (1995). The fact that Simmons has an explanation for the

uncontroverted facts does not make them controverted. Simmons' explanations in his "yes-but" statements fall within the realm of conclusory statements and legal arguments that do not change the uncontroverted nature of the facts.

Next, Simmons argues the effect of the assumption of risk doctrine has been fundamentally altered by the adoption of comparative fault in Kansas. Simmons acknowledges that his argument was rejected in *Jackson v. City of Kansas City*, 235 Kan. 278, Syl. ¶ 6, 680 P.2d 877 (1984), and *Tuley v. Kansas City Power & Light Co.*, 252 Kan. 205, 210, 843 P.2d 248 (1992). Nevertheless, Simmons contends assumption of risk has merged into comparative fault where evidence of a plaintiff's knowledge and appreciation of a potentially dangerous condition in the workplace would still be admissible and the jury would be permitted to consider that evidence along with all other evidence in its determination of comparative fault. Simmons claims Kansas is in the minority because at least 21 states have "joined ranks in holding that retaining the doctrine of assumption of risk as an absolute defense cannot be squared with a system which allocates fault on a comparative basis." We decline Simmons' invitation. It is for the Kansas Supreme Court or legislature to make such a policy statement.

The Kansas Supreme Court recently referenced the assumption of risk doctrine in the context of a golfer who was struck by lightning. See *Sall v. T's, Inc.*, 281 Kan. 1355, 1372, 136 P.3d 471 (2006) ("To the extent the Court of Appeals' majority suggests that a 'play at [your] own risk' warning equates with a golfer assuming the risk of lightning strikes, the common-law assumption of risk doctrine is restricted to cases involving employer-employee relationships."); see also *Pullen v. West*, 278 Kan. 183, 192, 92 P.3d 584 (2004) (holding defense is viable but rejecting on facts because no employer-employee relationship); *Tuley*, 252 Kan. at 210 (same); *Walters v. St. Francis Hosp. & Med. Center, Inc.*, 23 Kan. App. 2d 595, 601, 932 P.2d 1041, *rev. denied* 262 Kan. 969 (1997).

Simmons also asks us to resist the tug of stare decisis and decide that the time is ripe for a change in Kansas law involving assumption of risk. See *Rhoten v. Dickson*, 290 Kan. 92, 112, 223 P.3d 786 (2010) (The doctrine of stare decisis holds that once a point

of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.). We are bound by decisions of the Kansas Supreme Court. See *Buchanan v. Overley*, 39 Kan. App. 2d 171, 175-76, 178 P.3d 53, *rev. denied* 286 Kan. 1176 (2008) (The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position.). The arguments made by Simmons are no different than those raised in *Tuley*, namely, the rationale for retaining the doctrine is no longer persuasive in that it has outlived its utility and it defeats the purpose of comparative fault legislation, K.S.A. 60-258a. 252 Kan. at 210. We apply a similar rationale to that applied by the *Tuley* court. It cannot be ignored that the Kansas Legislature has had nearly 20 years since the *Tuley* decision to abrogate statutory assumption of risk and has not done so. We are unwilling to abolish the doctrine as the legislature has given no indication it desires to do so. The court in *Jackson* stated: "Within its very restricted periphery of application, the common law defense of assumption of risk has not been altered by the adoption of comparative fault, K.S.A. 60-258a, and continues to constitute an absolute bar to recovery." 235 Kan. 278, Syl. ¶ 6; see also *George v. Beggs*, 1 Kan. App. 2d 356, 564 P.2d 593, *rev. denied* 225 Kan. 844 (1997) ("The doctrine of assumption of risk remains viable in Kansas though its application is limited to cases such as this where a master-servant relationship is involved.").

Simmons argues the district court erred in granting summary judgment based on the assumption of risk doctrine, assuming the doctrine still survives.

Our standard for examining cases decided on summary judgment is well established and will not be restated in full. Summary judgment is appropriate when there are no genuine issues of material fact. The evidence is viewed in the light most favorable to the nonmoving party, but the nonmoving party must come forward with evidence to establish a dispute as to a material fact. Where reasonable minds could differ as to the conclusions drawn from

the evidence, summary judgment must be denied. *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

We apply a specific standard of review for negligence actions:

> "In a negligence action, summary judgment is proper if the only questions presented are questions of law. To recover for negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law. Whether the duty has been breached is a question of fact." *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. ¶ 8, 836 P.2d 1128 (1992).

The theory Simmons espouses on appeal revolves around two levels of assumption of risk—primary assumption of risk and secondary assumption of risk (Primary assumption of risk is not a defense, but a legal theory which relieves the defendant of a duty which the defendant might otherwise owe to the plaintiff with respect to particular risks—a question of law. Secondary assumption of risk occurs when the defendant owes a duty of care to the plaintiff, but the plaintiff knowingly proceeds to encounter a known risk imposed by the defendant's breach of duty—a jury question.). See 57B Am. Jur. 2d, Negligence §§ 763, 764, 793.

Both parties claim these two levels of assumption of risk have not been mentioned in Kansas jurisprudence. Our research shows otherwise. Contrary to Simmons' arguments on appeal, the Kansas Supreme Court has recognized the two levels of assumption of risk; however, it was in the context of injuries to firefighters, *i.e.* the Fireman's Rule, and the doctrine was never applied. In *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 573-75, 694 P.2d 433 (1985), the court held the assumption of risk doctrine could not be the supporting authority for the Fireman's Rule because it was limited to a master-servant relationship:

> "A number of courts have used an assumption of the risk analysis in determining that a fire fighter who is injured in the performance of his duty cannot sue a third party whose negligence created the condition resulting in the injuries. See *Baker v. Superior Court*, 129 Cal. App. 3d 710, 181 Cal. Rptr. 311 (1982); *Krauth [v. Geller]*, 31 N.J. 270[, 157 A.2d 129 (1960)]. The Fireman's Rule is not based upon 'express' assumption of the risk, *i.e.*, where parties contract with each other so that one accepts the risk of harm which is instant to the other's conduct, but rather upon 'implied' assumption of the risk.

"Assumption of the risk doctrine is divided into 'primary' and 'secondary' assumption of the risk. Primary assumption of the risk technically is not a defense, but rather a legal theory which relieves an individual of a duty which he might otherwise owe another with respect to a particular risk. Secondary assumption of the risk occurs when the individual voluntarily encounters a known, appreciated risk without an intended manifestation by that individual that he consents to relieve another of his duty. Primary assumption of risk, therefore, is a doctrine which limits a duty owed by the occupier of the premises to the fire fighter. The primary assumption of risk doctrine is an absolute bar to a fire fighter's recovery; it dictates that the occupier of the premises did not owe the individual fireman any duty of care. The Minnesota Supreme Court has made a comprehensive analysis of this theory in *Armstrong v. Mailand*, 284 N.W.2d 343 (Minn. 979).

. . . .

"To use assumption of the risk as a basis for adopting the Fireman's Rule in Kansas, it would be necessary to base it on secondary assumption of risk where a master/servant relationship is involved. We would be required to adopt the legal theory that an individual taxpayer, as occupant of the premises, is the employer of the fire fighter employee. We do not believe that assumption of the risk can be carried to that extent."

"In Kansas, the common-law assumption of risk doctrine is restricted to cases involving employer-employee relationships." *Tuley*, 252 Kan. at 210. Simmons' employment with Porter Farms falls within this prerequisite of the assumption of risk doctrine.

There is a healthy supply of assumption of risk cases in Kansas. One of the cases providing a detailed examination of the history and application of the assumption of risk doctrine is *Smith v. Massey-Ferguson, Inc.*, 256 Kan. 90, 883 P.2d 1120 (1994). Simmons relies heavily on *Smith* in support of his argument that assumption of risk should not apply in the present case just as it did not apply in *Smith*. Smith was injured when his hands got caught in the header part of a combine as he prepared for a day's custom cutting of wheat. The safety shield for the header had been removed. Smith testified how he greased and inspected the combine, but had no explanation for how his hand got caught in the header. Smith reported to his boss and received instructions from him about what tasks were to be performed, what equipment was to be used, and where the cutting would start. One of the issues in *Smith* was whether the case should be decided as a matter of law, not by

the jury, and whether Smith assumed the risk of his employment as a matter of law or it was an issue for the jury.

The *Smith* court relied on *Tuley*, 252 Kan. 205, Syl. ¶¶.1-7, for discussion of the general principles of the assumption of risk doctrine:

" 'The common-law assumption of risk doctrine is restricted to cases involving employer-employee relationships.'

" 'Within its very restricted periphery of application, the common-law defense of assumption of risk has not been altered by the adoption of comparative fault, K.S.A. 1991 Supp. 60-258a, and continues to constitute an absolute bar to recovery.'

" 'Under the doctrine of assumed risk, one who voluntarily exposes oneself . . . to a known or appreciated danger due to the negligence of another may not recover for the injury sustained thereby.'

" 'Assumption of risk arises through an implied contract of assuming the risk of a known danger; the essence of the doctrine is venturousness, and it implies intentional exposure to a known danger.'

" 'In applying assumption of risk principles, the knowledge and appreciation of the risk involved is to be judged by both a subjective standard, *i.e.*, knowledge attributable to the individual plaintiff and his or her situation, and an objective standard, *i.e.*, knowledge attributable to a reasonable person. The plaintiff will be held to comprehend a risk that must have been quite clear and obvious to him or her.'

" 'The assumption of the usual risks of employment is not ordinarily a jury question. It is a matter of law. It is only if the risk is or may be unusual that a jury question can arise; and even in such cases, if the risk though unusual is obvious, such as an ordinarily prudent person could appreciate and understand, the worker who persists in the employment assumes the risk.'

" 'It is not knowledge of the actual facts that is determinative in applying assumption of risk; it is knowledge of the risk involved.' " *Smith*, 256 Kan. at 94-95.

Recognizing that the facts of *Tuley*, *i.e.*, property damage instead of personal injury, were not exactly on all fours, the *Smith* court relied on *Fishburn v. International Harvester Co.*, 157 Kan. 43, 138 P.2d 471 (1943), for authority that an employer had a duty to maintain a safe work environment. The *Fishburn* court stated:

"It is the duty of the master to furnish his servant with a safe place in which to work and with safe and reasonably suitable machinery, tools, implements and appliances with which to perform the work in which the servant is engaged."

"An employee may enter upon the discharge of his labor assuming his employer has performed his duty with respect to the furnishing of reasonably safe tools."

"Assumption of risk by an employee begins after the employer has performed his full duty by providing the workman with safe and reasonably suitable tools, and failure to furnish or provide such will constitute negligence unless the workman knew of the defective condition or could have known of it by reasonable observation." 157 Kan. 43, Syl. ¶¶ 1-3.

The *Fishburn* court further stated:

"[W]here an employee was injured as a result of having been furnished defective tools and appliances that in such case it cannot be said as a matter of law either the danger was so obvious that the employee must have known of it or that it was so remote the employer could not by chance have had knowledge of it and that both questions were for the jury. [Citation omitted.]" 157 Kan. at 46.

After its lengthy discussion of assumption of risk in Kansas, the *Smith* court held the assumption of risk doctrine did not permit summary judgment in favor of Massey-Ferguson. The *Smith* court stated:

"This court's task, therefore, is to consider whether the danger posed by the shield having been removed from the header was so obvious that Smith (or an ordinarily prudent person) must have known of it and whether he (or the ordinarily prudent person) must have appreciated the danger attending its use. The evidence in the present case does not conclusively show that Smith knew or ought to have known of the danger and its consequences. The trial court did not err in submitting the question to the jury." 256 Kan. at 107-08

In the present case, the district court's decision can be broken down into three basic findings in support of granting summary judgment based on assumption of risk. Each one of these findings is supported by Kansas caselaw.

*"The plaintiff in this case had knowledge relating to the use of or dealing with automobile mechanics or vehicle repair equal to or superior of that of the defendants. The court finds the plaintiff was in charge of this particular project and nobody else told him how to do his job."*

The experience of the injured employee has been utilized to bar a claim under the assumption of risk doctrine. In *Wilson v. Deer*, 197 Kan. 171, 415 P.2d 289 (1966), Wilson sought to recover for the loss of two fingers when his hand got caught in a grain auger. The auger was not equipped with any safety device. The *Wilson* court relied heavily on Wilson's knowledge of the auger and his

prior use of the auger. 197 Kan. at 172. The district court granted summary judgment to the Deers as they were absolved of negligence because Wilson "assumed the risk of his employment, including the specific hazard of getting his fingers caught in the auger," and our Supreme court affirmed. 197 Kan. at 172 ("[H]e knew all there was to know about the auger and knew as much about the risk involved as did defendants.").

In *Uhlrig v. Shortt*, 194 Kan. 68, 397 P.2d 321 (1964), the district court entered judgment in favor of Shortt, the owner of the silo in which Uhlrig, a farm laborer employed by Shortt, was injured. The Supreme Court affirmed. Uhlrig, an experienced farm hand, was inside the silo moving the end of the pipe around so that the ensilage which was being blown through it into the silo was evenly distributed. When the distributor pipe clogged, the ensilage came showering down from the bottomless gooseneck above and Uhlrig was unable to see. As he made his way to the door, he was hit on the head by the distributor pipe and fell, seriously injuring his right eye.

Uhlrig testified that the distributor pipe's clogging was to be expected and could not be helped. The machine was in good working condition at the time of the accident. There was no evidence that Shortt had knowledge of any possible hazards that were not fully known to Uhlrig. In these circumstances, the court concluded that there was no evidence of negligence on the part of Shortt and that Uhlrig "assumed the risk of any hazard which existed in connection with his employment." 194 Kan. at 73. The court expressly rejected Uhlrig's contention that there were questions of fact which needed to be determined by the jury and reiterated the rule that assumption of the risk of employment ordinarily is a matter of law rather than a jury question. 194 Kan. at 74.

*"The court finds the plaintiff did recognize that there is a risk of fire with gasoline and made a decision to proceed ahead with the project as he was asked to do as part of his employment. The court finds the plaintiff did not ask for any additional equipment but chose to proceed with the equipment that he had in his possession."*

The caselaw is consistent that the injured party must recognize or should have recognized the risk he or she assumed and that the injured party assumes the usual risks of their employment. In *Anderson v. Cooper*, 192 Kan. 723, 391 P.2d 86 (1964), the district court entered judgment in favor of Cooper, the employer, and against Anderson, a farm laborer, and the Supreme Court affirmed. The decision was based on Anderson having assumed the risk of injury from his own negligence. Anderson's leg was amputated after he unfastened the hood of an ensilage cutter and was thrown into contact with the rotating cutting blades. The *Anderson* court concluded that "[a] master cannot be held liable where the employee elects to take a reckless and unnecessary risk. [Anderson] would not have been injured had he observed instructions not to remove the hood from the cutting blades until he had determined that they were not revolving." 192 Kan. at 729.

In *Blackmore v. Auer*, 187 Kan. 434, 357 P.2d 765 (1960), Blackmore was tossing hay bales on a flatbed wagon being pulled by a truck, his hook slipped out of a bale, the truck hit a bump, and Blackmore fell backward to the ground, breaking his neck. The district court determined that Auer was free of any negligence and that Blackmore was not contributorily negligent. The district court concluded that Blackmore assumed the usual risks of his employment, sustained Auer's demurrer, and the *Blackmore* court affirmed. 187 Kan. at 447.

In *George v. Beggs*, 1 Kan. App. 2d 356, George was employed as a general farm laborer on Beggs' farm. George was injured when he was catching a calf to vaccinate and the rest of the herd became spooked and stampeded over him. Beggs had ordered George to catch the calf. The *George* court affirmed the trial court's entry of a directed verdict in favor of Beggs based on assumption of risk. The court relied on George's knowledge of cattle and that he had vaccinated calves before. The court entered a directed verdict even though George "had never gone into a pen to catch such a large calf, and he had no idea of the danger in what he was doing." 1 Kan. App. 2d at 359.

*"In addition to its previous findings, the court finds that there was no defective equipment or tools used or provided by the defendants*

*in this case. There may not have been the ideal equipment or proper equipment but the equipment provided to the plaintiff to perform the repair was not defective."*

This last finding utilized by the district court revolves around the employer's duty to provide a safe workplace. Under Kansas law, an employer has a duty to provide a safe workplace and equipment. See, *e.g., Smith v. Massey-Ferguson, Inc.*, 256 Kan. at 111. In *Mechtley v. Price*, 217 Kan. 344, 349, 536 P.2d 1385 (1975), appellants claimed the assumption of risk defense was not available to appellees because they had promised to remedy the defect after being advised of the defect by appellant. The *Mechtley* court found this notice was never given. Appellant relied on the following rule:

"This court has always recognized a close kinship of the assumption of risk doctrine to that of contributory negligence but more recently, because attempts to harmonize or differentiate them have sometimes resulted in confusion, has confined the former to controversies involving the master-servant relationship. See *Smith v. Blakey*, 213 Kan. 91, 101, 515 P.2d 1062 [1973]. We have no case expressly holding that the exception to the assumption of risk doctrine described above in *Hernandez* is inapplicable where reasonable alternative tools or instrumentalities were available for an employee's use, yet that rule seems implicit in the element of continuance of service in reliance upon the employer's promise. No rule is to be uncritically applied to reach an illogical result under the particular circumstances. Long ago, in *U. P. Rly. Co. v. Estes*, 37 Kan. 715, 16 Pac. 131 [1887], this court held that if an employee voluntarily places himself in a dangerous position unnecessarily when there is a safer place he could have selected, and injury occurs to him by reason of his choice, he is held to be contributorily negligent and cannot recover for such injury." 217 Kan. at 350.

In *Railway Co. v. Quinlan*, 77 Kan. 126, 137, 93 Pac. 632 (1908), the court stated:

"A servant assumes only those hazards which are the natural incidents of the employment. Tools which are dangerously defective are not the natural incidents of any employment. It is the master's absolute and unassignable duty to supply safe ones. If defective tools are furnished the servant may assume the risk attending their use, but he can be held to have done so only when he has knowledge or the equivalent of knowledge of the facts and of the danger."

In *Hernandez v. Bachand*, 199 Kan. 82, 427 P.2d 473 (1967), the plaintiff was aware of an unprotected shaft and unguarded rollers on a feed grinder and knew the dangers they posed, but con-

tinued to operate the grinder in that condition for over a year. The court found that Hernandez assumed the risk as matter of law:

"It is true there is an exception to the general rule of the assumption of risk in those cases where an employee, after complaint has been made of a defective or dangerous condition, is induced to continue his service for a reasonable time by reason of his employer's promise to remedy the defect. [Citations omitted.] The application of this exception to the rule presupposes that the employee has complained of the dangerous condition to his employer; that the employer has promised to remedy the dangerous condition; and that the employee has thereafter continued his service for a reasonable time in reliance upon the employer's promise." 199 Kan. at 86.

## Conclusion

We find the district court did not err in granting summary judgment to Porter Farms. The court in *Lively v. Railway Co.*, 115 Kan. 784, 789, 225 Pac. 103 (1924), acknowledged the painful reality of the assumption of risk doctrine, but insisted on the necessity of permitting the legislature to alter the situation if it so chooses:

"It is also a part of the doctrine of assumption of risk that a workman's recourse, when called upon to perform a task too heavy or too dangerous for his capacity, is to quit his employment. That sounds harsh, too, but unless the court is to usurp the functions of the legislature it has no alternative but to declare the law as it is." 115 Kan. at 789.

The principles of the assumption of risk doctrine set forth in *Lively* long ago are still present in our Pattern Instructions today. PIK Civ. 4th 107.54 provides: "If a risk though unusual is obvious, such as that which an ordinary prudent person could appreciate and understand, a workman who persists in the employment assumes that risk. A workman's recourse when called upon to perform a task too strenuous or too dangerous for (his) (her) capacity is to quit (his) (her) employment."

Each assumption of risk case has a critical fact for or against the granting of summary judgment. This case is noteworthy because we believe Simmons' superior knowledge of the work environment and his failure to take reasonable precautions prohibit his recovery. Simmons was well-acquainted with and highly experienced in performing the ordinary task of removing a fuel tank. As a result, he understood the risk of fire inherent in the task. Simmons also had

superior knowledge that while the equipment provided to him was not defective, the use of safer equipment may have reduced the risk of fire. Yet Simmons performed the task without conveying his superior knowledge to Porter Farms or requesting different tools from them.

We believe the evidence of record establishes as a matter of law that Simmons assumed as an incident of his employment with Porter Farms the very risk and perils which led to his injuries. It does not appear from the record that Simmons initiated a discussion or even complained of any dangerous conditions. We are sympathetic to the tragedy that befell Simmons, but our judgment must be based on the legal principles set forth in this opinion. Simmons' recovery is precluded by his own assumption of risk. We find the language in *George* to be particularly telling:

"There is nothing in this record to justify a conclusion that the facilities provided at the defendant's farm were out of the ordinary or that the procedures followed in treating the calves were in any way unusual. On the contrary, the plaintiff's testimony indicates that he had been involved in similar procedures with similar facilities even while in high school. Neither is there anything in the record which would indicate an emergency situation into which the plaintiff was ordered without time to deliberate as to a better course to pursue. There was time to deliberate and there was some discussion as to how best to handle the situation. . . . As it developed, the situation to which the plaintiff responded was one of danger, which was apparent, and of which the plaintiff was or should have been aware." 1 Kan. App. 2d at 360-61.

Affirmed.