No. 45,496

ONOFRE GUERRA, *Appellee,* v. J. CHARLES JAEGER and WILLIAM Q. JAEGER, *Appellants.*

(461 P. 2d 737)

Opinion filed December 6, 1969.

*James W. Wallace*, of Scott City, argued the cause and was on the brief for the appellants.

*Dale E. Saffels*, of Garden City, argued the cause, and *A. M. Fleming, Lloyd H. Haag* and *Clifford R. Hope, Jr.*, all of Garden City, were with him on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a controversy over liability for an eye injury incurred while a farm laborer was engaged in applying anhydrous ammonia to the soil with farm equipment.

Plaintiff when first employed by defendants operated a farm tractor. In 1963 he relieved a fellow worker in applying anhydrous ammonia for about a week and one-half. During such time he filled the tank approximately thirty times.

Again on October 19, 1964, plaintiff was engaged in applying anhydrous ammonia, a fertilizer, by the defendants. He was instructed by the defendant, J. Charles Jaeger, to "be very careful because if the liquid were to escape and you were to breathe any of it it would knock you down." He was told to stand upwind so that he would not breathe the liquid.

The equipment used was a farm tractor with tanks mounted over each front wheel. Such tanks are commonly called "nurse tanks." In application, anhydrous ammonia is permitted to escape from the nurse tank through a valve in the bottom of the nurse tank into a hose in which there is a second valve at the terminus of the hose. The terminus of the hose is connected to a third valving apparatus located on a fender of the tractor. The third valve is called a nitrolator. It permits flow from the nurse tank to the equipment applying the ammonia to the soil and also permits the operator to regulate the rate of flow. Anhydrous ammonia will not flow from the nurse tank to the soil unless all three valves are opened.

The nurse tanks are filled from a mobile storage tank by disconnecting the terminus of the hose from the nitrolator and con-

necting that end to a valve on the storage tank. In filling the nurse tank, the hose is not disconnected from the nurse tank. The same hose is used in filling the nurse tank and in transmitting ammonia from the nurse tank to the nitrolator.

Anhydrous ammonia being gaseous, pressure builds up in the nurse tank and unless that pressure is relieved, the pressure in the storage tank will repel flow from the nurse tank to the storage tank and vice versa. In filling the nurse tank the pressure is relieved by permitting gas to escape into the air or by running it from the top of the nurse tank to the top of the storage tank by means of a pump.

At the time of the accident, October 20, 1964, plaintiff was filling the nurse tanks. He completed filling one tank by reducing the pressure of the nurse tank and by forcing the pressure from the nurse tank into the storage tank. He completed the filling of the second nurse tank by permitting the pressure to escape into the air. When the pressure was escaping from the nurse tank, he was ill at ease. The escaping gas made such a noise that it hurt his ears. It was whistling. He could see the escaping gas. He stood away from it because his employer had instructed him to do so when it was so evaporating.

When plaintiff had completed filling both nurse tanks, the coupling and valve on the hose connected to the storage tank were coated by frost or ice. He disconnected the hose from the storage tank and carried the terminus of the hose with coupling and valve annexed to the tractor fender upon which the nitrolator was located and laid it there, then got upon the tractor platform in front of the seat. In attempting to fasten the coupling of the hose to the nitrolator, plaintiff dropped the hose. He grabbed the hose in his left hand and the valve handle in his right hand. When he grabbed the valve by his right hand, the valve opened and the ammonia sprayed into his face.

Plaintiff's eyes were burned, and he suffered the loss of his left eye.

The plaintiff brought an action to recover for his injuries alleging in part:

"That . . . the Defendants furnished the Plaintiff with equipment on which to work as their employee, which was a dangerous instrument and on which Defendants failed to properly instruct Plaintiff as to its use; and as a result of the negligence of the Defendants, the equipment on which Plaintiff was working caused fertilizer to spray in the face of the Plaintiff, . . ."

Defendants answered alleging assumption of risk and contributory negligence on the part of the plaintiff.

The case was tried to the court. It orally announced its findings which we present in part:

". . . I am going to find the accident actually occurred in this manner; that the Plaintiff while handling the hose with the valve on the end of it, in getting ready to connect it, dropped it. This is a heavy hose and a heavy valve and in grabbing for it his hand touched the valve and opened it, . . .

"I am going to find that the equipment used in this case was in good shape, was not defective, not substandard in any way.

"I am going to find that Plaintiff knew and had been warned that there was danger about the handling of anhydrous ammonia, but I am going to find that he did not comprehend fully just how dangerous it was; that he did not comprehend this danger to the extent that he understood it and was intentionally taking the risk, . . .

"I am going to find that in this case that anhydrous ammonia handled under high pressure with the complicated system of valving and hoses and pumps is an extremely dangerous compound; it is highly corrosive, it is used as a commercial solvent; it is a dangerous thing, and in this instance the pressure was such that it's partially liquid and partially vapor, and I am going to hold that anyone who was using this and having their employees use it is under a duty to investigate, study it and know its properties and the dangers involved in it, and to carefully and specifically warn employees of that, and this is knowledge that the employer either has to have or should have. At least he has a duty to obtain it. For that reason I am going to hold that the employers were negligent in this case. . . . I am going to find that all the plaintiff thought could happen to him he would have some ill effects from inhaling it, or he was told to turn his face because he might inhale it. I don't think he comprehended this and in boiling it down I am going to say it was negligence in failure to adequately warn and I don't believe that his dropping the hose constitutes an act that is contributory negligence which would bar his recovery.

"The causation factor is this, if he had been adequately warned where he understood how rough this was and how dangerous it was, he would have used a lot more care. I mean moving all these hoses around one could be dropped and if he had dropped it he would have backed away from it rather than grab it. . . ."

The trial court directed judgment for the plaintiff in the total amount of $13,500.

The defendants have appealed.

The appellants contend that the trial court erred in finding that (1) the appellee did not assume the risk involved; (2) the appellee was not guilty of contributory negligence, and (3) the proximate cause of the injury was the negligence of the appellants in failing to give adequate warning.

We are forced to disagree with appellants' contentions. There is really no basic dispute in the facts to which the law is to be applied.

The law of assumption of risk and contributory negligence is well established. The dispute in most cases arises over the facts to which the rules of law are to be applied. We will present only in a general way the general principles of law applicable to the more detailed facts which control this controversy.

While contributory negligence and assumption of risk are somewhat akin and grow out of closely related facts, the two doctrines of law are not synonymous. Contributory negligence arises from a tort while assumption of risk arises out of an implied contract. Both doctrines require some knowledge of the danger or risk.

The doctrine of assumed risk rests upon the expressed or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for the resulting injury. To raise an implied agreement the risk assumed must be known to the employee, or it must be of such nature as, by the exercise of reasonable observation and caution for his own safety, he should have known it. It can never be said that one has agreed to assume responsibility for that of which he had no knowledge, or of the existence of which he is not chargeable with notice. The word "risk" in this connection includes more than a knowledge of conditions. It also includes a knowledge, or an opportunity for knowledge, of the peril of the employee arising from the conditions. (*Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253; *Parker v. City of Wichita,* 150 Kan. 249, 92 P. 2d 86; *Taylor v. Hostetler,* 186 Kan. 788, 352 P. 2d 1042; *Blackmore v. Auer,* 187 Kan. 434, 357 P. 2d 765; *Anderson v. Cooper,* 192 Kan. 723, 391 P. 2d 86.)

We have defined contributory negligence as conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is the legally contributing cause, cooperating with the negligence of the defendant, in bringing about the plaintiff's harm. It is conduct which falls short of the standard to which a reasonable man should conform in order to protect himself from harm. (*Cruse v. Dole,* 155 Kan. 292, 124 P. 2d 470.)

It is not in every instance where one exposes himself to known danger that he is denied recovery, but only in that class of cases where the danger is so obvious and imminent that a person of ordinary prudence would not subject himself to it. Mere knowledge

of the danger of doing a certain act without a full apprehension of the risk involved is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger a comprehension of some risk. (*Wainscott v. Carlson Construction Co.,* 179 Kan. 410, 295 P. 2d 649; *Nave v. Hixenbaugh,* 180 Kan. 370, 304 P. 2d 482; *Shufelberger v. Worden,* 189 Kan. 379, 369 P. 2d 382; *Webster v. Kansas Power & Light Co.,* 182 Kan. 626, 629, 323 P. 2d 643.)

It is also a well established rule that knowledge of danger, or threatened danger, will not be imputed to a person who fails to look for danger which under the surrounding circumstances he had no reason to apprehend. (*Bradley v. Allis Hotel Co.,* 153 Kan. 166, 109 P. 2d 165; *Buck v. Miller Amusement Co.,* 166 Kan. 205, 200 P. 2d 286.)

The burden is on the defendant to establish contributory negligence and whether contributory negligence exists presents a question for the finder of fact. A finding of fact supported by substantial competent evidence will not be disturbed on appeal. These rules are so well established that citation of authorities is not justified.

With the above rules in mind we should examine the facts in more detail for the purpose of determining what instructions were given appellee by appellants or what knowledge he had of the risk or danger.

The only instructions the appellants appear to have given the appellee regarding the dangers of anhydrous ammonia were that he should keep up wind when filling the tanks and language to the effect that "It's powerful, it will knock the whaley out of you." The appellee construed this to mean it would knock him down if he inhaled it.

It would appear that the appellants did not know enough about the dangers of anhydrous ammonia to properly instruct the plaintiff, their employee.

The appellant, J. Charles Jaeger, who hired and instructed the appellee, testified:

"Q. In your opinion you regard yourself as qualified to handle anhydrous ammonia and this type of equipment, did you not?

"A. I would say someone more directly knowledgeable in the equipment and the properties of anhydrous ammonia would say 'no you were no[t] at the time, 1964, qualified to operate this equipment'.

"Q. Are you qualified now?

"A. I feel like with my exposure to this unfortunate accident and information I have had that I have sought since then, I feel like I would be quite qualified to operate it."

The trial court properly concluded that anhydrous ammonia under high pressure was an extremely dangerous compound. In fact, the legislature has seen fit to authorize the State Board of Agriculture to promulgate regulations to insure the handling, storage and transportation of liquid fertilizer with safety. (K. S. A. 2-1212.)

An employer placing this dangerous chemical in the possession of an employee for distribution by a complicated apparatus has the duty to inform himself of the danger and risk in order to be able to instruct the employee.

The appellee did not know on October 20, 1964, that the fertilizer would burn his eyes. Neither the appellee nor the appellants knew, at the time of the injury, that water was the best antidote for anhydrous ammonia.

Ammonia is a colorless pungent gas composed of hydrogen and nitrogen. Anhydrous simply means without any water. Anhydrous ammonia is a dry gas. It dehydrates that part of the body which it touches—absorbs the moisture—hence the burning effect. The best antidote is, therefore, water to replace the dehydration.

The State Board of Agriculture, under the authority of K. S. A. 2-1212, has passed regulations for the transportation and handling of liquid fertilizer. Kansas Administrative Regulations, Section 4-10-6 (E) (4), covering systems mounted on farm vehicles for transportation of liquid fertilizers, states:

"All vehicles shall carry a can containing five (5) gallons or more of fresh water." (The rule was the same in 1964 but designated as 4-10-6.5.4.)

The mobile tank, from which the nurse tanks were filled, was subject to this regulation. Yet, the undisputed testimony discloses that there was no water at the scene of the operations. Had the appellants known of and observed the regulation and informed the plaintiff as to the use of water as an antidote, the injury might well have been avoided.

We do not have here a case of the usual farm injury where the risk assumed is apparent—a cutting knife, blade or disk.

We are forced to conclude that the appellee was not sufficiently informed and did not have knowledge of the danger and risk involved in handling and applying anhydrous ammonia, a liquid fertilizer. Neither was he informed, and he did not have knowledge.

of the simple antidote in case he made bodily contact. Therefore, the appellee did not assume the risk and was not guilty of contributory negligence. The appellants were negligent in that they did not properly inform themselves and properly instruct the plaintiff as to the danger and risk involved.

The judgment is affirmed.

APPROVED BY THE COURT.