No. 47,153

CITY OF DOUGLASS, BUTLER COUNTY, KANSAS, *et al., Appellants,* v.
TRI-CO FERTILIZER, INC., *Appellee.*

(519 P. 2d 724)

Opinion filed
March 2, 1974.

*Lester C. Arvin,* of Arvin, Arvin and Busey, Chartered, of Wichita, argued the cause, and *Morris Moon,* of Augusta, was with him on the brief for the appellants.

*Robert M. Green,* of El Dorado, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action by the city of Douglass and ten resident property owners to enjoin Tri-Co Fertilizer, Inc., from maintaining and using gasoline and diesel fuel storage facilities and constructing and maintaining an anhydrous ammonia storage tank within the city. Trial to the court resulted in judgment for defendant Tri-Co and plaintiffs have appealed.

Tri-Co, a Kansas corporation with its office at Douglass, is a farm supply company engaged in bulk sales of fertilizer, gasoline, diesel fuel, equipment and chemicals. It had previously leased a tract of land outside the city limits of Douglass upon which it stored anhydrous ammonia. This lease had expired and it became necessary to acquire new storage facilities. Through purchase and lease Tri-Co acquired about one city block of land within the corporate limits of Douglass for this purpose. This property was along one side of the Santa Fe railway, part of it being on railroad

right of way leased from Santa Fe. It was bounded on two sides by residential areas.

In April or May, 1971, Lloyd Howard, chief executive officer of Tri-Co, went to the city clerk's office to check city ordinances respecting installation of bulk storage of gasoline and diesel fuel. He read the pertinent ordinances and expressed his desire to meet with the city council with respect to the construction of such storage facilities. The city clerk advised him that if a Mr. Polk could be satisfied everybody else in the area would be also. Polk operated a filling station in Douglass, he was the mayor's son-in-law and, at some undesignated time, had been police judge in Douglass. Howard then sought Polk's approval. Polk first expressed opposition but stated he would approve if the storage tanks were buried.

On May 3, 1971, at a regular session of the Douglass city council Howard presented a plan which showed four fuel tanks above ground. Upon the council's objection to this plan Howard presented an alternate plan which showed all but one diesel tank underground. By formal vote the council approved this latter plan and also granted Tri-Co permission to move a small building onto the premises for use as an office building. Tri-Co then cleared its newly-acquired tract of old sheds, trees, trash and a house and it dug holes and set the four storage tanks for gasoline and diesel fuel. No further action respecting these tanks was taken by the council until this lawsuit was instituted in August, 1971. Meanwhile Tri-Co notified the state fire marshal's office of its installation of these tanks and that they were being left open for inspection. Tri-Co was advised by that office that there was no problem and, despite several calls thereafter, that office made no inspection of the tanks. At some point plans diagramming the tanks were submitted to the fire marshal's office.

Tri-Co had previously stored anhydrous ammonia in nurse tanks on its leased ground outside the city. These are 1,000 gallon tanks mounted on four-wheeled trailers by means of which the product is transported to the farms for application. Anhydrous ammonia is a gaseous combination of hydrogen and nitrogen used primarily as an agricultural fertilizer. On June 17, 1971, on behalf of Tri-Co Mr. Howard received oral permission from the city council to bring an anhydrous ammonia tank into the city until the next council meeting. At the next regular council meeting on Tuesday, July 6, 1971, Howard sought approval for permanent placement of a 12,000 gallon anhydrous ammonia tank on the tract in question.

He had meanwhile received a letter from the state sealer at Topeka, who is also anhydrous ammonia administrator for the state board of agriculture, stating the proposed location was satisfactory but that Tri-Co would have to secure city approval. Howard exhibited a diagram showing the proposed location of the tank. The five member council discussed the safety features of the project and voted three to two to approve the proposed project.

The next day, Wednesday, July 7, 1971, the mayor told Howard it was possible one of the council members who was an employee of Tri-Co may have been voting in a conflict of interest situation and that another council meeting had been called for Friday, July 9, to revote on the matter of the anhydrous ammonia tank. On Thursday, July 8, Tri-Co poured cement footings for the tank and on Friday, July 9, installed the tank on the footings. That same day, at a special meeting of the council called at the request of four of its members, the council by unanimous vote of the four members present disapproved Tri-Co's application to install the tank. Another special meeting was held July 13, 1971, at which the council enacted ordinance 401 which prohibited the storage and handling of anhydrous ammonia within the corporate limits of Douglass.

In their petition for injunction appellants alleged that both the storage of anhydrous ammonia and the maintenance of the gasoline and diesel fuel tanks constituted a common nuisance; that the city council had denied permission to construct the ammonia facility and it had been built in violation of city ordinance; and the fuel tanks were maintained in violation of rule 22-7-6 promulgated by the state fire marshal.

The trial court embodied its decision in a memorandum opinion. It commented that the proceeding was an "emotionally-charged matter, reminiscent of a school board election or an interchurch struggle for power". It found that the council had on May 3, 1971, approved Tri-Co's application to install the fuel tanks and the operation of the gasoline bulk station was not in violation of any city ordinance. It recited other facts concerning the ammonia tank as to which there is no dispute and it summed up the evidence respecting the alleged existence of a common nuisance. It concluded there was insufficient evidence that the fuel tanks constituted a nuisance. Respecting the 12,000 gallon ammonia tank it had this to say:

"The Court cannot forget that for at least two years prior to the enactment of the ordinance, the defendant stored and handled anhydrous ammonia on the property in question. True, not in the quantities he now proposes to store, but the fact remains the compound has been present. That orally and by formal Resolution the defendant was led to believe he could proceed with the further implementation of its plants. These actions by the City Commissioners strongly suggest that the purpose of the later enactments was not an exercise of police power in the public interest, but was imposed for the benefit of other property owners and a destruction of the defendant's rights. (See *Dobbins v. Los Angeles* 195 U. S. 233; 25 SCT 18.) From the facts presented, the Court finds the ordinance arbitrary and unreasonable, and the plaintiffs are enjoined from the enforcement of Ordinance 401, and the same is declared void."

Judgment denying the requested injunction as to both types of storage facilities was entered accordingly.

We consider first appellants' contention that appellee's facilities constituted a nuisance. It has been widely recognized that fuel storage tanks do not constitute a nuisance *per se*, although, of course, under certain circumstances such tanks may become a nuisance by reason of the manner in which they are constructed or operated (see anno. 50 ALR 3d 209). Evidence pro and con was presented on the issue. Certain of appellants' witnesses complained of noise and dust caused by trucks using the streets and alleys gasoline fumes and the fact children might play near the storage of flammable material. One person expressed fear of gasoline explosion and another fear of suffocation from escape of anhydrous ammonia. Other residents of the immediate vicincity testified they found nothing objectionable in the operation of the facility and in fact believed appellee had improved the property from its prior condition. Upon this controverted evidence the trial court's conclusion there was insufficient evidence upon which to find that the construction and operation of the bulk gasoline station constituted a nuisance cannot be disturbed.

Appellants assert that in ruling on the fuel tanks the trial court overlooked certain provisos of K. S. A. 31-207 (since repealed and replaced by K. S. A. 31-133) which stated that the storage of petroleum products in violation of the rules and regulations of the state fire marshal constitutes a nuisance. The state fire marshal is authorized to and has promulgated rules and regulations governing such storage. Appellants assert that appellee's construction and maintenance of the fuel tanks was in violation of certain rules prescribed by the state fire marshal for the regulation of bulk oil

stations. The rule relied on is K. A. R. 22-7-6 which provides in part:

"*Approval of plans.* (1) Except as otherwise provided in (*a*) of this section, before the construction of any new bulk plant or service station or additional facilities for the storage, handling or use of flammable liquids is undertaken in any bulk plant or service station, drawings or blueprints thereof made to scale shall be submitted to the state fire marshal with an application, all in duplicate, for his approval. . . .

"(*a*) If proposed construction or installation is to be located within a local jurisdiction which requires that a local permit be first obtained, the drawings or blueprints shall be submitted to the appropriate local official or body with the application for permit and then except in case of dispute need not be submitted to the state fire marshal."

The violation asserted by appellants is that the drawings or blueprints were never submitted to or approved by the state fire marshal. The contention has no merit. The plans for the fuel tanks were submitted to the city council. The city had two ordinances on the subject of petroleum products. Local approval respecting underground tanks was required. The plans complied with all requirements of these ordinances and accordingly the city granted permission for the construction and maintenance of the fuel tanks. There was no dispute and the state fire marshal had no function to perform—he advised there was "no problem". The storage tanks were constructed and dispute over this aspect did not arise until some time later. The situation is somewhat analogous to that in *Dobbins v. Los Angeles,* 195 U. S. 223, 49 L. ed. 169, 25 S. Ct. 18. There a city enacted an ordinance limiting construction of gas works to a certain district. Plaintiff contracted for construction of a gas works within that district. The appropriate city officials approved the construction application and construction proceeded. Thereafter the city council enacted a second ordinance limiting the district so that plaintiff's construction was not within it. It was held that the city's action was an arbitrary interference with property rights protected by the fourteenth amendment to the federal constitution. In the case at bar the trial court correctly refused to enjoin the maintenance of appellee's fuel tanks.

Appellants assert the city has statutory authority to prohibit the storage or handling of anhydrous ammonia within its corporate limits. Its ordinance 401 did just that and provided for fine or imprisonment for violation. Appellants further contend enactment of the ordinance was reasonable and constituted a valid exercise of the city's police power. Appellee counters with the assertion

the city's action was simply an endeavor by the mayor and his son-in-law to prevent appellee from expanding its business in Douglass and that there was evidence the mayor was not satisfied with the city's first action in voting to allow construction of the large anhydrous ammonia tank and that he put pressure on the council to change its vote. The difficulty with appellee's argument is the trial court made no such findings and had it done so that evidence would not have supported them. The court did conclude the city's action was arbitrary and unreasonable and it commented that the city's actions suggested the later ordinance was not an exercise of the police power in the public interest but was for the benefit of the property owners and a destruction of appellee's rights. These findings hardly amount to those asserted by appellee.

The legislature has seen fit to speak on the subject of anhydrous ammonia (K. S. A. 1973 Supp. 2-1212, et seq.) Section 2-1212 authorizes and directs the state board of agriculture to make regulations for the safe handling, storage and transportation of anhydrous ammonia. Section 2-1215 provides:

"A municipality or other political subdivision, shall not enact or enforce any ordinance inconsistent with the regulations promulgated and adopted pursuant to this act. Nothing in this act shall in any way impair the power of any municipality or other political subdivision, (1) to prohibit the use of land for anhydrous ammonia storage or handling, or (2) to impose more stringent limitations within its jurisdiction, by zoning regulations, or by building or other regulatory codes."

Thus the legislature has specifically authorized municipalities to prohibit land within the city from being used for storage of anhydrous ammonia. In 5 McQuillen, Municipal Corporations, 3d ed., 1969 Rev. Vol., § 18.02, this rule is stated:

"An ordinance will be sustained, regardless of the opinion of the court respecting its reasonableness, where its terms and provisions are expressly and specifically authorized by charter or statutory authority, where it is not inconsistent with the Constitution, treaties or laws of the United States, or of the state and where the power to enact it has been substantially followed and exercised in a reasonable manner. Indeed, an ordinance enacted pursuant to express and specific legislative authorization will be declared void as unreasonable, arbitrary, and oppressive only in extreme cases, if at all. The attack, if any, must be made against the constitutionality of the enabling statute. The reason for the rule is found in the principle that questions of wisdom and expediency in authorizing a municipality to enact certain legislation are for the legislature and not the courts." (pp. 335-337.)

Specific constitutional challenges to ordinance 401 are not

mounted here although it must be recognized assertions that an ordinance is unreasonable and arbitrary may reach constitutional dimensions.

A municipal corporation in the execise of its police power may make regulations with respect to property within its borders provided the regulations are reasonable and bear a substantial relation to the preservation of the public health, safety or welfare. In *Grigsby v. Mitchum,* 191 Kan. 293, 380 P. 2d 363, it was stated:

"Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public, and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them." (p. 302.)

In *Delight Wholesale Co. v. City of Overland Park,* 203 Kan. 99, 103, 453 P. 2d 82, this court declared that the right to sell is not absolute but may be regulated or withheld, if necessary, in the interest of public safety and welfare.

The preamble to ordinance 401 is as follows:

"WHEREAS, Anhydrous ammonia is hereby deemed to be a product which, when released into the atmosphere in inhabited areas, is injurious to the health, safety and welfare of human life and may prove lethal; and

"WHEREAS, Because of the inherent nature of such matter it is necessary to restrict and limit the storage and handling of said product away from populated areas in order to provide for the health, safety and welfare of the public generally; and

"WHEREAS, There are no areas within the corporate limits of the City of Douglass sufficiently remote wherein such product might be safely stored or handled. . . ."

In *Guerra v. Jaeger,* 204 Kan. 309, 461 P. 2d 737, a tort action, this court stated it was proper for the trial court to conclude that anhydrous ammonia under high pressure was an extremely dangerous compound. In the case at bar there was testimony that the state board of agriculture considers the substance to be inherently dangerous; instances were related of evacuation of the population in the towns of Beattie and Scandia, also of fatal injuries in Haskell and Scott counties, because of mishaps in the handling of anhydrous ammonia. There was substantial evidence the council acted reasonably in enacting ordinance 401—nothing beyond sheer speculation indicated to the contrary. There was no evidence of concerted action between the council on the one hand and Mr. Polk or the mayor on the other in the enactment of the ordinance. Nor can

the ruling in *Dobbins v. Los Angeles*, supra, come to the aid of appellee with respect to the ammonia tank. The next day after the council had, by a three to two vote, granted permission to install the tank, appellee was notified that because of an ethical situation involving its employee who was a member of the council another vote was going to be taken. At this point appellee had done nothing toward actual installation of the tank. Prompt rescission by the council of the approval of appellee's application was forthcoming and it is in no position to claim infringement of constitutional rights as in *Dobbins*. The trial court's conclusion that enactment of ordinance 401 was arbitrary and unreasonable is not sufficiently supported by the evidence and its judgment declining enforcement of that ordinance must be, and is hereby, reversed and the cause is remanded with directions to grant the relief requested as to the anhydrous ammonia storage facility.

Judgment affirmed in part and reversed in part.

APPROVED BY THE COURT.