No. 102,662

ADAM SIMMONS, *Appellant*, v. RICHARD W. PORTER and
SARAH M. PORTER, d/b/a PORTER FARMS, *Appellees*.
(312 P.3d 345)

Opinion filed November 8, 2013.

*Jeffrey W. Jones*, of Hamilton, Laughlin, Barker, Johnson & Watson, of Topeka, argued the cause and was on the briefs for appellant.

*Craig C. Blumreich*, of Larson & Blumreich, Chartered, of Topeka, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

BILES, J.: Adam Simmons was seriously injured in a gasoline fire while at work. He sued his employer for negligently failing to provide him with a reasonably safe workplace. The district court denied his claim based on the common-law assumption of risk doctrine, which can bar recovery when an employee who knows of a dangerous situation voluntarily exposes himself or herself to that danger. The Court of Appeals affirmed based on existing precedent. *Simmons v. Porter*, 45 Kan. App. 2d 177, 182-83, 245 P.3d 1091 (2011). Simmons argues we should abandon this court-made doctrine in favor of our state's statutory comparative fault system in which any alleged assumption of risk would be considered as just one factor when determining proportionality of fault based on the circumstances. We agree with Simmons.

Kansas caselaw has steadily narrowed the use of the assumption of risk doctrine. See *Jackson v. City of Kansas City*, 235 Kan. 278, 306, 680 P.2d 877 (1984) (describing the doctrine as having "a very restricted periphery of application"); see also *Smith v. Massey-Ferguson, Inc.*, 256 Kan. 90, 96, 883 P.2d 1120 (1994) (when evidence does not conclusively show employee knew or ought to have known of the danger and its consequences, the issue is for the jury). And our review of the caselaw now convinces us the doctrine's retention in Kansas runs counter to the approach taken in the vast majority of comparative fault jurisdictions, which eliminated assumption of risk after comparative fault was adopted. See, *e.g.*, *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 825, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975).

We hold the comparative fault statute should control, and now overrule our prior caselaw adhering to the assumption of risk doc-

trine as an absolute bar to recovery. We reverse and remand this case to the district court for reconsideration under the comparative fault rubric. See K.S.A. 60-258a.

FACTUAL AND PROCEDURAL BACKGROUND

Simmons worked for Richard W. Porter and Sarah M. Porter, d/b/a Porter Farms, as a farm truck and machinery mechanic. In February 2004, Simmons was removing a leaky fuel tank from a 1978 Ford F-250 pickup truck. He used a 4-ton floor jack to raise the truck and a floor creeper to roll under the vehicle on his back. Simmons hung a shop light with an incandescent bulb from the pickup's frame for illumination. The tank was less than half full of gasoline when Simmons began working, and he did not drain that gasoline from the tank.

Before putting the jack under the truck, Simmons noticed the fuel tank was not secured with factory or replacement fastenings. On the front side was a plumbing strap wrapped around the tank and connected to the frame by a bolt. On the back, bailing wire was placed around the tank and frame. Simmons started using a pneumatic air-powered wrench to loosen the bolt securing the plumbing strap when the tank fell to one side, covering Simmons in gasoline. He quickly pushed himself out from underneath the vehicle, but his foot caught on the shop light, which fell from the pickup's frame. The incandescent bulb shattered, and the gasoline ignited.

Simmons sued Porter Farms for his injuries sustained in the fire. He claimed Porter Farms, as his employer, owed him a legal duty of care and skill to provide a reasonably safe place to work and that his injuries were proximately caused by the breach of that duty. His lawsuit was not barred by the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.*, because Porter Farms, an independent farming and ranching business, qualified as an "agricultural pursuit" and Simmons' work was an "employment incident thereto." See K.S.A. 44-505(a)(1). In its answer, Porter Farms raised assumption of risk as an affirmative defense as required by K.S.A. 2012 Supp. 60-208(c)(1)(C). The district court ordered bifurcated discovery with the first phase focusing on liability.

At a deposition on the liability issue, Simmons testified he had been aware of the potential fire hazard associated with removing a fuel tank. He also acknowledged knowing there was fuel in the tank before he began work; observing the plumbing strap that was in place; observing the bailing wire; and noticing only a single bolt secured the plumbing strap. Simmons said he had previously removed three or four fuel tanks from other Porter Farm vehicles before his injury.

Porter Farms filed a motion for summary judgment, arguing assumption of risk barred Simmons' negligence claim because he voluntarily exposed himself to a known danger. The crux of the argument was that even though Simmons claimed Porter Farms was negligent because it required him to work on a pickup with a fuel tank that was not safely secured, the uncontroverted facts demonstrated Simmons was the most experienced mechanic Porter Farms employed and was "fully" aware of the manner in which the fuel tank was mounted in the truck. Porter Farms argued Simmons had the knowledge and experience to appreciate the fire risk and was voluntarily removing the fuel tank despite his awareness of that risk.

Simmons responded that genuine issues of material fact precluded summary judgment. He added his own statement of uncontroverted facts, which included: he worked as an actual mechanic only for a year before joining Porter Farms; he removed only three or four fuel tanks at his previous job; his former employer furnished vehicle lifts and siphon pumps for removing fuel; and none of his other jobs required him to remove fuel tanks. He further claimed that because there was no lift to raise the pickup, he had to use a "regular" shop lamp with an incandescent bulb, which had a half-solid and half-open wire cage. He alleged he had not criticized Porter Farms before the accident for failing to provide him with a safe, cool, and enclosed shop lamp due to his limited training in auto mechanics. He also alleged that because of his lack of experience, he did not appreciate the increased danger posed by the "jerry-rigged" way the fuel tank was attached to the vehicle. Simmons also cited a letter from an expert witness, who detailed the proper method for removing a fuel tank. This witness

claimed Porter Farms fell below the reasonable standard of care required for a safe work environment because it did not supply the workshop with a lift, equipment to drain the fuel tank, or a cool and enclosed shop lamp.

The district court determined the material facts were uncontroverted and granted Porter Farms' summary judgment motion. It found Simmons was in charge of how the repair was performed, had superior knowledge over Porter Farms, and assumed the risk of his injury. From this factual perspective, the district court held the assumption of risk doctrine barred Simmons' negligence claim.

Simmons appealed, arguing the assumption of risk doctrine should be overruled or, in the alternative, that disputed material facts prohibited summary judgment. The Court of Appeals affirmed the district court. In doing so, the panel did not delve deeply into Simmons' invitation to overrule the assumption of risk doctrine, citing its duty to adhere to this court's prior caselaw declining similar arguments. It also rejected Simmons' alternative contention that material fact issues barred summary judgment even if the doctrine remained applicable. *Simmons*, 45 Kan. App. 2d at 182-83.

We granted Simmons' petition for review pursuant to K.S.A. 20-3018(b) and K.S.A. 60-2101(b) as to three issues: (1) whether the common-law doctrine of assumption of risk should be abrogated or altered; (2) whether the Court of Appeals erred in its application of the doctrine, if it is not to be abrogated or altered; and (3) whether the Court of Appeals erred in holding no genuine issue of material fact precluded summary judgment. Because we abolish the assumption of risk doctrine, it is unnecessary to consider the remaining issues.

## STANDARD OF REVIEW

We are reviewing the district court's order granting Porter Farms' summary judgment motion.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judg-

ment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. On appeal the court applies the same rules, and where the court finds that reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Osterhaus v. Toth*, 291 Kan. 759, Syl. ¶ 1, 249 P.3d 888 (2011).

But our threshold concern is whether we should overrule the common-law assumption of risk doctrine. Applicability of a common-law doctrine is a question of law over which this court has unlimited review. See *David v. Hett*, 293 Kan. 679, 682-83, 270 P.3d 1102 (2011) (determining when economic loss doctrine applies is question of law); *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 203, 4 P.3d 1149 (2000) (whether to recognize a new common-law cause of action is a question of law subject to unlimited review). We also consider the doctrine of stare decisis because Simmons asks us to overrule existing precedent. That doctrine holds:

"[O]nce a point of law has been established by a court, it will generally be followed by the same court and all courts of lower rank in subsequent cases when the same legal issue is raised. A court of last resort will follow that rule of law unless clearly convinced it was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent." *Miller v. Johnson*, 295 Kan. 636, 653, 289 P.3d 1098 (2012) (citing *Rhoten v. Dickson*, 290 Kan. 92, 112, 223 P.3d 786 [2010]).

## THE ASSUMPTION OF RISK DOCTRINE

The assumption of risk doctrine is a common-law affirmative defense to negligence. See *Pullen v. West*, 278 Kan. 183, 191-92, 92 P.3d 584 (2004); K.S.A. 2012 Supp. 60-208(c)(1)(C). In Kansas, the doctrine's operation has been limited to cases involving employer-employee relationships when the injuries at issue were not subject to the Workers Compensation Act. *Jackson*, 235 Kan. at 305. It bars recovery when an employee knows of a dangerous situation and voluntarily exposes himself or herself to the attendant risk. *Tuley v. Kansas City Power & Light Co.*, 252 Kan. 205, 210, 843 P.2d 248 (1992); *Mechtley v. Price*, 217 Kan. 344, 348, 536 P.2d 1385 (1975). But the doctrine is significantly restricted in its application. For example, it does not apply when the risk is unusual,

or in any context other than an employer-employee relationship. *Jackson*, 235 Kan. at 294.

The doctrine is premised on a view that there is an express or implied agreement within the employer-employee relationship that an employee accepts the risk of known dangers to which the employee is exposed as a part of the work and takes responsibility for any resulting injury. *Mechtley*, 217 Kan. at 348. But the doctrine functions only as to risks known to—or at least discoverable by— the employee through reasonable observation or caution for his or her safety. An employee cannot agree to assume responsibility for unknown risks. *Guerra v. Jaeger*, 204 Kan. 309, 313, 461 P.2d 737 (1969).

Assumption of risk has historically precluded recovery by plaintiffs who were injured on-the-job but who understood the risks they were undertaking. See *Hernandez v. Bachand*, 199 Kan. 82, 86-87, 427 P.2d 473 (1967) (court adhered to assumption of risk despite suggestion that the doctrine may be unfair). In other words, assumption of risk bars recovery when two conditions are present: (1) the employee knew and understood the risk being incurred; and (2) the choice to incur the risk was entirely free and voluntary. See *Tuley*, 252 Kan. at 212; see also Restatement (Second) of Agency § 521 (1958) (master not liable to servant for unsafe premises if the servant, knowing the facts and understanding the risks, voluntarily continues in the employment).

Kansas courts discussed assumption of risk as early as 1898. See *Greef Bros. v. Brown*, 7 Kan. App. 394, 51 P. 926 (1898). But in those early cases it was viewed as a "species of contributory negligence." *Greef Bros.*, 7 Kan. App. at 398 (discussing relationship between assumption of risk and contributory negligence). Contributory negligence is defined as "conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is the legally contributing cause, cooperating with the negligence of the defendant, in bringing about the plaintiff's harm." *Guerra*, 204 Kan. at 313. Over time, however, this court recognized distinctions between the two doctrines, with contributory negligence seen as arising from tort law, while as-

sumption of risk arose from an implied contract. *Guerra*, 204 Kan. at 313.

A third, and more contemporary, doctrine of comparative fault is a creature of statute. Under comparative fault, a plaintiff may recover damages so long as the plaintiff's negligence is less than the collective causal negligence of the other parties to the occurrence; but those damages are diminished in proportion to the plaintiff's own negligence. K.S.A. 60-258a.The Kansas Legislature enacted comparative fault in 1974. L. 1974, ch. 239, sec. 1. And despite minor changes to its language, the statute has remained substantively unchanged since its introduction. See L. 1976, ch. 251, sec. 4; L. 1987, ch. 221, sec. 1; L. 2010, ch. 135, sec. 132.

In adopting comparative fault, the legislature intended "to impose individual liability for damages based on the proportionate fault of all parties to the occurrence" giving rise to the injuries, even if one or more parties cannot be joined formally as litigants or be held legally responsible for their proportionate fault; *Kennedy v. City of Sawyer*, 228 Kan. 439, 450, 618 P.2d 788 (1980) (comparative fault adopted to "soften the 'all or nothing' rule of common law contributory negligence"); *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 625, 205 P.3d 1265 (2009); see also *Brown v. Keill*, 224 Kan. 195, 197, 580 P.2d 867 (1978) (purpose of comparative fault to abolish contributory negligence as total bar to recovery and to provide for apportionment of damages on basis of comparative negligence).

The comparative fault statute expressly abolished contributory negligence, but is silent regarding assumption of risk. See K.S.A. 60-258a(a). The question before us is whether the legislature's adoption of comparative fault should abrogate the assumption of risk doctrine. Our review of the caselaw from other jurisdictions and treatises indicates that in those states with comparative fault systems, its introduction prompted many to abolish assumption of risk. See, *e.g., Li*, 13 Cal. 3d at 825. But before discussing a few of those decisions from other jurisdictions, we must first address three assumption of risk opinions from this court: *Jackson*, 235 Kan. at 295; *Tuley*, 252 Kan. at 210; and *Smith*, 256 Kan. at 96.

In *Jackson*, injured firefighters sued their city employer and other firefighters after two fire trucks collided while on emergency runs from different fire stations to the same fire. The city claimed assumption of risk barred recovery because the firefighters assumed the risk of being injured in traffic accidents as part of the ordinary course of their employment—traveling from fire stations to fires. This court held the doctrine was not applicable under the facts, concluding "[a] collision between two fire trucks on emergency runs is, fortunately, a rare occurrence. We do not believe such a collision could be considered, as a matter of law, a usual risk of a fireman's employment." 235 Kan. at 295. The court also noted "serious allegations" were made regarding the city's own negligence as the firefighters' employer, having previously observed that the doctrine was not viable when the risks at issue resulted from the employer's negligence. 235 Kan. at 294-95.

The *Jackson* court's holding that the doctrine did not bar the negligence claims made in that case should have ended its consideration of the matter. But it went on to address the firefighters' alternative argument that the legislature's then-recent enactment of comparative fault had abolished the assumption of risk defense. The court first observed: "The status of the defense of assumption of risk after introduction of comparative fault has presented a thorny problem for a number of jurisdictions." 235 Kan. at 301. And then after reviewing Kansas caselaw on assumption of risk, the court concluded it "remains viable and continues to constitute an absolute bar to recovery by an injured employee." 235 Kan. at 306.

In dicta, the *Jackson* court noted that prior to comparative fault's enactment, Kansas courts had consistently distinguished between assumption of risk and contributory negligence, treating assumption of risk as a distinct concept. Therefore, the court concluded, it was reasonable to interpret the statute's abrogation of contributory negligence as being unrelated to assumption of risk. To support this logic, the court further observed the legislature did not delete "assumption of risk" from the affirmative defenses set out in the general pleadings statute, K.S.A. 60-208(c), when that statute was amended after comparative fault was adopted. 235 Kan. at 306. But it also made this observation:

"As shown by the cases heretofore cited the employer must, in essence, be negligence free as a condition to the successful assertion of the defense of assumption of risk. Therefore, when assumption of risk has been established there is no negligence to be compared between the employer and the injured employee." 235 Kan. at 305.

This statement came back to haunt the court in *Tuley*, when it had to characterize it as a "sweeping generalization" made in dicta that "if interpreted literally, is not a correct statement of the law." 252 Kan. at 214.

In *Tuley*, the plaintiffs were current and former power plant employees who alleged acid rain damaged their vehicles parked outside the plant. They alleged the employer's negligence caused the acid rain exposure. The employer asserted assumption of risk as an affirmative defense, and the district court granted summary judgment on that basis. On appeal, plaintiffs asked the court to reconsider the doctrine, arguing the rationale for retaining it "is no longer persuasive in that [the doctrine] has outlived its utility and . . . defeats the purpose of comparative fault legislation." 252 Kan. at 210.

In rejecting that suggestion, the *Tuley* court recounted the *Jackson* court's explanation that contributory negligence and assumption of risk had traditionally been treated as separate concepts; that the comparative negligence statute remained silent on what effect comparative fault had on assumption of risk; and that the general pleading statute still enumerated assumption of risk as an affirmative defense. 252 Kan. at 210. And because of this continued statutory silence and the legislature's failure to act in *Jackson's* wake, the *Tuley* court adhered to *Jackson's* holding that the legislature did not intend comparative fault to supersede assumption of risk. 252 Kan. at 210-11. The court held it was "unwilling . . . to abolish the doctrine because the legislature has given no indication it desires to do so." 252 Kan. at 211.

Notably, the *Tuley* court undertook this analysis despite its holding that the employer "had no duty to furnish parking to its employees." 252 Kan. at 215. In other words, the *Tuley* court again extended itself to make a conclusion it did not need to address. And in a later case, this court recognized the *Tuley* court's analysis

was "of limited precedential value due to its unusual circumstances. Principal among them was the absence of any duty on the part of the employer." *Smith*, 256 Kan. at 107. On reflection now, it is puzzling that either the *Jackson* court or the *Tuley* court stretched its analysis to decide whether comparative fault abrogated assumption of risk.

This court has not revisited the question since, but we severely constricted the assumption of risk doctrine in *Smith*, 256 Kan. 90. In that case, a farm employee sued his employer, his supervisor, and a combine manufacturer after seriously injuring his hand in a combine's moving parts. There was conflicting evidence on whether the employee intentionally reached into the moving parts or whether he accidentally came into contact with them. The employee settled with the employer and combine manufacturer before trial, so only the claim against the supervisor went forward. The district court submitted the case to a jury with instructions on both assumption of risk and comparative fault. The jury applied comparative fault, assigning 10 percent fault to Smith, 10 percent to the combine's manufacturer, 20 percent to the employer, and 60 percent to the supervisor. The verdict form did not contain any questions about assumption of risk.

On appeal, the *Smith* court considered whether the district court should have decided as a matter of law whether assumption of risk barred recovery, rather than submitting the issue to the jury. After reviewing our caselaw, the *Smith* court defined its task as considering "whether the danger posed . . . was so obvious that Smith (or an ordinarily prudent person) must have known of it and whether he (or the ordinarily prudent person) must have appreciated the danger attending its use." 256 Kan. at 107. The court held the evidence did not conclusively show the employee knew or ought to have known of the danger and its consequences, so the district court properly submitted the issue to the jury. 256 Kan. at 107-08.

*Smith*'s holding illustrates assumption of risk's more recent and limited utility as an employer's vehicle for securing a judgment as a matter of law. *Smith* essentially recognizes that determining when assumption of risk might apply as a matter of law actually requires

the district court to analyze facts in the same way a jury would scrutinize them in assessing a plaintiff's comparative fault—a function that, if performed by the court, is inconsistent with our longstanding caselaw requiring such facts to be determined by a jury. See *Martell v. Driscoll*, 297 Kan. 524, Syl. ¶ 7, 302 P.3d 375 (2013) ("Usually, a determination of the presence or absence of negligence should be left to the trier of fact."); *Honeycutt v. City of Wichita*, 247 Kan. 250, 251, 796 P.2d 549 (1990) (same).

In other words, when a defendant employer asks the district court to apply assumption of risk as a matter of law, *e.g.*, on summary judgment, it is asking the court to function as a jury would in deciding whether the facts in a particular case demonstrate the danger at issue was (1) obvious; and (2) was or should have been as well known to the employee as to the employer. And *Smith* still also underscored that as a matter of tort law, an employer has a duty to provide a safe workplace and equipment. *Smith*, 256 Kan. at 111 ("The rule is simply that an employer has the duty not to expose his employees to perils which the employer may guard against by the exercise of reasonable care."). Such facts and duties necessarily intertwine and rarely make it appropriate for summary judgment.

The result from *Smith* prompted a pair of legal commentators to conclude the case "may sound the death knell of a meaningful assumption of risk defense," explaining, in part, "the holding brings comparative fault into these workplace injury cases by allowing the jury to find contributory negligence in lieu of assumption of risk." Westerbeke & McAllister, *Survey of Kansas Tort Law: Part I*, 49 Kan. L. Rev. 1037, 1132 (2001). More specifically, under *Smith* a district court is hard-pressed to determine whether assumption of risk bars a plaintiff's negligence claim as a matter of law and instead is more likely to submit the entire case to the jury with instructions to either (1) find the plaintiff assumed the risk and deny recovery or (2) resolve the case under comparative negligence principles.

A majority of comparative fault jurisdictions have resolved similar conflicts by modifying or abolishing assumption of risk as a defense. See, *e.g.*, *Murray v. Ramada Inns, Inc.*, 521 So. 2d 1123, 1130 (La. 1988) (observing assumption of risk was "passing from

the scene" in most common-law jurisdictions). In *Murray*, the Louisiana Supreme Court determined assumption of risk would no longer bar recovery because it was indistinguishable from contributory negligence. The court persuasively reasoned it would make no sense to hold conduct that would result merely in reduced recovery when labeled "comparative negligence" but could altogether bar recovery when identified as "assumption of risk." The court wrote: " 'It would be the ultimate legal inconsistency to reject contributory negligence as an absolute defense yet at the same time allow its effect to continue under the guise of assumption of risk.' " 521 So. 2d at 1133 (quoting *Salinas v. Vierstra*, 107 Idaho 984, 989, 695 P.2d 369 [1985]).

The *Murray* court, similar to the *Jackson* and *Tuley* courts, also addressed the argument that assumption of risk should survive because the legislature was silent after enacting the comparative fault statute. But the *Murray* court rejected this contention, noting it was just as reasonable to argue that if the legislature had intended to preserve assumption of risk as a bar to recovery it could have codified the doctrine in statute. In other words, any ambiguity regarding what legislative inaction may signal concerning the judicially created doctrine cut both ways. 521 So. 2d at 1133.

What was clear, the *Murray* court continued, was that the legislature intended to eliminate contributory negligence as a complete bar to recovery. Beyond that, the court said, the legislature effectively left the "tough details" about comparative fault's scope to the courts. But the court also reasoned that " 'the intent of the statute should not be frustrated by the unfortunate practice of describing certain plaintiffs' conduct as 'assumption of the risk.' " The court held that applying comparative fault and considering a plaintiff's awareness of any danger among the other factors analyzed when apportioning fault makes the inherent inequities resulting from the doctrine's "all or nothing" recovery rule disappear. 521 So. 2d at 1133.

Likewise, the Idaho Supreme Court considered the continuing viability of assumption of risk in light of Idaho's comparative fault statute and its legislature's silence on the doctrine's fate. *Salinas*, 107 Idaho at 988-89. And even though it reserved a narrow excep-

tion for situations involving those who expressly assume the risk involved, the *Salinas* court otherwise abolished the doctrine. 107 Idaho at 989-90. In doing so, the court discussed the archaic purpose of assumption of risk in light of statutory comparative fault schemes:

"The policy of insulating business from 'human overhead,' however valid it may have been during the infancy of the Industrial Revolution, is diametrically opposed to current social policy and thought, which is to promote safety and protect the employee in his or her working environment. Furthermore, the 'all-or-nothing' effect of application of the assumption of risk defense is inequitable. It runs counter to all sense of reason and fairness . . . . The scope of [the Idaho comparative fault statute] is broad. It is not limited to certain types of action; it is not limited by exceptions. Rather, it covers any action in which the plaintiff is seeking to recover on grounds of negligence. [The statute's] intent is clear: Contributory negligence is not to be a complete bar to recovery; instead, liability is to be apportioned between the parties based on the degree of fault for which each is responsible.

". . . To hold otherwise, would be to perpetuate a gross legal inconsistency by prohibiting the use of contributory negligence as an absolute bar yet allow its effect to continue under the guise of assumption of risk." 107 Idaho at 989.

Many other courts have taken a similar approach in abandoning assumption of risk because of comparative fault's enactment in their states. See, *e.g.*, *Li*, 13 Cal. 3d at 825 ("We think it clear that the adoption of a system of comparative negligence should entail the merger of the defense of assumption of the risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is no more than a variant of contributory negligence."); *Wilson v. Gordon*, 354 A.2d 398, 402 (Me. 1976) (abolishing the harsh all-or-nothing rule of assumption of risk and using it as a factor in calculating damages); *Davenport v. Cotton Hope Plantation*, 333 S.C. 71, 86, 508 S.E.2d 565 (1998) (holding it would be contrary to the purpose of comparative fault to require a plaintiff to bear all costs of the injury despite being less than 50 percent at fault); see also *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 417, 947 S.W.2d 780 (1997); *Spencer v. Wal-Mart Stores East, L.P.*, 930 A.2d 881, 885 (Del. 2007); *Kendrick v. Ed's Beach Service, Inc.*, 577 So. 2d 936, 938 (Fla. 1991); *Yoneda v. Tom*, 110 Hawai'i 367,

372, 133 P.3d 796 (2006); *Springrose v. Willmore*, 292 Minn. 23, 25-26, 192 N.W.2d 826 (1971); *Churchill v. Pearl River Basin Dev. Dist.*, 757 So. 2d 940, 943 (Miss. 1999); *Sheppard by Wilson v. Midway R-1 School Dist.*, 904 S.W.2d 257, 262 (Mo. App. 1995); *Mead v. M.S.B., Inc.*, 264 Mont. 465, 477, 872 P.2d 782 (1994); *Turner v. Mandalay Sports Entm't*, 124 Nev. 213, 220, 180 P.3d 1172 (2008); *Green v. Mid Dakota Clinic*, 673 N.W.2d 257, 260 (N.D. 2004); *Allen v. Dover Co-Recreational Softball League*, 148 N.H. 407, 414, 807 A.2d 1274 (2002); *Berlangieri v. Running Elk Corp.*, 134 N.M. 341, 349, 76 P.3d 1098 (2003); *Rutter v. North-eastern Beaver Cty., Etc.*, 496 Pa. 590, 612-13, 437 A.2d 1198 (1981); *Keaton v. Hancock County Bd. of Educ.*, 119 S.W.3d 218, 224-25 (Tenn. App. 2003); *Fordham v. Oldroyd*, 171 P.3d 411, 415 (Utah 2007); *Sunday v. Stratton Corporation*, 136 Vt. 293, 304, 390 A.2d 398 (1978); *King v. Kayak Mfg. Corp.*, 182 W. Va. 276, 282, 387 S.E.2d 511 (1989); *Shain v. Racine Raiders Football Club, Inc.*, 297 Wis. 2d 869, 880, 726 N.W.2d 346 (Wis. App. 2006); *Parrish v. Groathouse Const., Inc.*, 130 P.3d 502, 505 (Wyo. 2006).

We find the rationale in these cases compelling and are now clearly convinced preserving assumption of risk as a complete bar to recovery is no longer sound and should be of no practical effect given the statutory scheme of comparative fault. Our willingness to overrule *Jackson* and *Tuley* partially rests on our confusion as to why these courts addressed the issue. See *Miller*, 295 Kan. at 653 (court will follow stare decisis unless clearly convinced it was originally erroneous). We are also troubled by the progression from characterizing assumption of risk as a "species of contributory negligence" to a holding that it is a separate and distinct concept. Compare *Greef Brothers*, 7 Kan. App. at 398 and *Jackson*, 235 Kan. at 306. Finally, we are persuaded by the majority of our sister states that have abolished common-law assumption of risk once their legislatures enacted comparative fault, particularly given the very narrow circumstances in which the doctrine still operates in Kansas—employer-employee relationships not covered by workers compensation.

Applying this conclusion to the case at hand, we hold the district court erred when it granted Porter Farms' motion for summary

judgment on the basis that Simmons assumed the risk from which his injuries followed, *i.e.*, the bar occasioned by the assumption of risk doctrine. We reverse the Court of Appeals decision affirming the judgment of the district court. The case is remanded to the district court for consideration of Simmons' negligence claims under the principles of comparative fault.

LUCKERT, J., not participating.

JOSEPH BRIBIESCA, District Judge, assigned.